Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:         jsaveri@saverilawfirm.com
               czirpoli@saverilawfirm.com
               cyoung@saverilawfirm.com
               kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:         mb@butericklaw.com

*Counsel for Individual and Representative Plaintiffs
and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Sarah Silverman, et al., | Case No. **3:23-cv-03416-AMO** |
|    Individual and Representative Plaintiffs, | **PLAINTIFFS' OPPOSITION TO OPENAI'S MOTION TO DISMISS** |
|      v. | |
| OpenAI, Inc., et al., | |
|        Defendants. | |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

III.  ARGUMENT ...................................................................................................... 4

      A.   OpenAI concedes that Plaintiffs have adequately alleged a direct copyright-infringement claim ......................................................................... 4

           1.   OpenAI's misleading and self-serving reframing of the U.S. Copyright Act ...................................................................................... 5

                a.   The Copyright Act serves the public interest primarily by granting rights to authors ................................................. 5

                b.   The Copyright Act secondarily serves the public interest through fair use ...................................................................... 5

                c.   Copyright infringement does not require a showing of "substantial similarity" in cases involving direct copying ... 6

           2.   Plaintiffs assert three theories of direct copyright infringement ...... 7

                a.   "Training" or "input" infringement .................................. 7

                b.   "Model" infringement ......................................................... 8

                c.   "Output" infringement ....................................................... 8

      B.   Plaintiffs adequately allege a claim for vicarious copyright infringement .. 10

      C.   Plaintiffs adequately allege a claim under DMCA § 1202(b) ..................... 12

           1.   Plaintiffs have pleaded all the elements of a DMCA § 1202(b) violation .................................................................................................. 13

      D.   Plaintiffs set forth California state-law claims ............................................ 17

           1.   Plaintiffs' California state-law claims are not preempted .............. 17

           2.   Plaintiffs state a claim under California's Unfair Competition Law ...................................................................................................... 19

           3.   Plaintiffs state a claim for negligence under California common law ...................................................................................................... 22

           4.   Plaintiffs have stated a claim for unjust enrichment under California common law ................................................................... 24

IV.   CONCLUSION ................................................................................................. 25

PLAINTIFFS' OPPOSITION TO OPENAI'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) ...................................... 17

*Andy Warhol Found. for the Visual Arts Inc. v. Goldsmith*, 143 S.Ct. 1258 (2023) ......................... 5, 6

*Armstrong-Harris v. Wells Fargo Bank, N.A.*, No. 21-CV-07637-HSG, 2022 WL
    3348426 (N.D. Cal. Aug. 12, 2022) ......................................................... 19

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................................... 22

*Beilstein-Institute Zur Förderung Der Chemischen Wissenschaften v. MDL Info. Sys.,
    Inc.,* No. C 04-05368 SI, 2006 WL 3218719 (N.D. Cal. Nov. 7, 2006) ............................. 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 4

*Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915 (N.D. Cal. 2013) ................................... 21

*Bravado Int'l Grp. v. Merch. Servs., Inc.*, No. CV 13-01032 MMM, 2014 WL
    12579810 (C.D. Cal. June 20, 2014) .......................................................... 7

*Briggs v. Blomkamp*, 70 F. Supp. 3d 1155 (N.D. Cal. 2014) .......................................... 7

*Bruton v. Gerber Prods. Co.*, 703 F. App'x 468 (9th Cir. 2017) ..................................... 24

*Byton N. Am. Co. v. Breitfeld*, No. CV-19-10563-DMG, 2020 WL 3802700 (C.D.
    Cal. Apr. 28, 2020) ......................................................................... 20

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ........................................... 6

*Cappello v. Walmart, Inc.,* 394 F. Supp. 3d 1015 (N.D. Cal. 2019) ................................. 20

*Cellular Accessories for Less, Inc. v. Trinitas LLC*, 65 F. Supp. 3d 909 (C.D. Cal.
    2014) ....................................................................................... 7

*China Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV 15-01869 MMM,
    2015 WL 12732432 (C.D. Cal. Dec. 7, 2015) ............................................... 10, 11

*ChromaDex, Inc. v. Elysium Health, Inc.*, No. SACV1602277CJCDFMX, 2017 WL
    7080237 (C.D. Cal. Nov. 28, 2017) ......................................................... 24

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................ 4

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) ................................................. 22

*CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. CV 12-10876-CAS, 2013 WL 1249021 (C.D. Cal. Mar. 25, 2013) .................................................................................... 24

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ....................................... 4

*Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756 (N.D. Tex. Nov. 7, 2019) ................................................................................... 13

*Doe 1 v. GitHub, Inc.*, ___ F. Supp. 3d ___, 2023 WL 3449131 (N.D. Cal. May 11, 2023) .............................................................................................................................. *passim*

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) .......................................................... 4

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463-RGK-MAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ................................................................................ 16

*ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) ................................... 24

*Fashion Nova, LLC v. Blush Mark, Inc.*, No. CV 22-6127 PSG (RAO), 2023 WL 4307646 (C.D. Cal. June 30, 2023) ............................................................................... 16

*Ferrero S.p.A. v. Imex Leader, Inc.*, No. 817CV02152DOCKESX, 2018 WL 11346538 (C.D. Cal. May 8, 2018) ................................................................................. 6

*Firoozyle v. Earthlink Network*, 153 F. Supp. 2d 1115 (N.D. Cal. 2001) ........................ 17

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ............................................................... 5, 6

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016) ........................ 12, 15

*Frost-Tsuji Architects v. Highway Inn, Inc.*, Civil No. 13-00496 SOM/BMK, 2015 WL 263556 (D. Haw. Jan. 21, 2015), .................................................................................. 16

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ................................................................................... 16

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896 (9th Cir. 1992).............................................................................................................................. 19

*Garcia v. Sony Comput. Ent. Am., LLC*, 859 F. Supp. 2d 1056 (N.D. Cal. 2012) ........... 20

*GC2 v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828 (N.D. Ill. 2019) ............................................................................................................... 15

*Hadley v. Kellogg Sales Corp.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) .......................... 25

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021) ................... 24, 25

*ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) ................................... 16

iv

*In re Bang Energy Drink Mktg. Litig*, No. 18-CV-05758-JST, 2020 WL 4458916
(N.D. Cal. Feb. 6, 2020) ............................................................................................. 24

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871 (N.D. Cal. 2019) ..................... 25

*Int'l News Serv. v. Associated Press,* 248 U.S. 215 (1918) ...................................................... 21

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*, No. CV122650JFWAJWX, 2015 WL
12712311 (C.D. Cal. Dec. 16, 2015) .................................................................... 9, 10

*Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561, at *3-4
(N.D. Cal. Mar. 26, 2019) ........................................................................................ 13

*Jacobsen v. Katzer*, 609 F. Supp. 2d 925 (N.D. Cal. 2009) ............................................... 18

*KaZee, Inc. v. Callender*, No. 4:19-CV-31-SDJ, 2020 WL 994832 (E.D. Tex. Mar.
2, 2020) ......................................................................................................................7

*Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999) ..................................... 16

*Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006) ........................................... 17

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D.
Ill. 2014) ................................................................................................................... 12

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) ..................................................8, 9

*Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052 (N.D. Cal. 2022) .......................... 12, 13, 16

*Maloney v. T3 Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) ............................................... 17

*Mango v. Buzzfeed, Inc.*, 970 F.3d 167 (2d Cir. 2020) ...................................................... 14

*McKay v. Sazerac Co., Inc.,* No. 23-CV-00522-EMC, 2023 WL 3549515 (N.D. Cal.
May 17, 2023) ........................................................................................................... 25

*MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928 (9th Cir. 2010) ........................... 12

*Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov.
25, 2003) ................................................................................................................... 12

*Merideth v. Chicago Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan.
9, 2014) ..................................................................................................................... 12

*Mollman v. Zoetop Bus. Co.*, No. CV 22-4128 PA, 2022 WL 17207103 (C.D. Cal.
Sep. 16, 2022) ........................................................................................................... 12

*Murphy v. Millennium Radio Grp.*, CIV.A. 08-1743 MAS, 2015 WL 419884 (D.N.J.
Jan. 30, 2015) ........................................................................................................... 12

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ..................................... 13

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007)............................22, 23

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ........................................ 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ............................10

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012) ....................7, 8, 10, 11

*Ross-Nash v. Almond*, No. 2:19-cv-00957-APG-NJK, 2020 WL 6947691 (D. Nev. Oct. 28, 2020) ........................................................................................................7

*Software Freedom Conservancy, Inc. v. Vizio, Inc.*, No. 8:21-cv-01943-JLS-KES, 2022 WL 1527518 (C.D. Cal. May 13, 2022) ...........................................................18

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)...........................................................4

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand, Inc.*, 524 F. Supp. 2d 1184 (C.D. Cal. 2007) ........................................................................................................................ 22

*Thomson Reuters Enter. Ctr. GMBH v. Ross Intelligence Inc.*, ___ F. Supp. 3d ___, 2023 WL 6210901 (D. Del. Sep. 25, 2023) .......................................... 6, 11, 17, 18

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122 (N.D. Cal. 2015) ........................................................................................................................4

*Venegas-Hernandez v. Asociacion de Compositores y Editores De Musica Latinoamericana (ACEMLA)*, 424 F.3d 50 (1st Cir. 2005) ........................................ 19

*Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065 (C.D. Cal. Feb. 12, 2015) ........................................................................................................... 12

*Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713 (N.D. Cal. Feb. 10. 2006) ............................................................................................................23

*Wu v. Sunrider Corp.*, No. CV 17-4825 DSF (SSX), 2017 WL 6880087 (C.D. Cal. Oct. 10, 2017) ...........................................................................................................25

*YellowCake, Inc. v. DashGo, Inc*, No. 1:21-CV-0803 AWI BAM, 2022 WL 172934 (E.D. Cal. Jan. 19, 2022) ..................................................................................................7

*Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837 (N.D. Cal. 2018) ...................................... 20

**State Cases**

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021).......................................................22, 23

*Ghirardo v. Antonioli*, 14 Cal.4th 39 (1996) ...............................................................25

*Hernandez v. Lopez*, 180 Cal. App. 4th 932 (2009) ........................................................ 24

*Ojala v. Bohlin*, 178 Cal. App. 2d 292 ( 1960)............................................................... 20

*Tufeld Corp. v. Beverly Hills Gateway, L.P.*, 86 Cal. App. 5th 12 (2022) ....................... 24

**Federal Statutes**

17 U.S.C. § 102 ..................................................................................................... 17

17 U.S.C. § 103..................................................................................................... 17

17 U.S.C. § 106 ...........................................................................................6, 17, 18

17 U.S.C. § 107..........................................................................................................6

17 U.S.C. § 301(a) ................................................................................................ 17

17 U.S.C. § 401, *et. seq.* ................................................................................... *passim*

17 U.S.C. § 411(a) ............................................................................................... 12

17 U.S.C. § 1202 .............................................................................................. *passim*

**State Statutes**

Cal. Bus. & Prof. Code § 17204 ...........................................................................21

**Rules**

Fed. R. Civ. P. 8(a)....................................................................................................4

Fed. R. Civ. P. 9(b) ............................................................................................... 13

Fed. R. Civ. P. 12(b)(6) ......................................................................................4, 7

**Constitutional Provisions**

U.S. Const., Article I, § 8, cl. 8............................................................................ 5, 21

**Other Authorities**

Mark A. Lemley & Bryan Casey, *Fair Learning*, 99 Tex. L. Rev. 743, 750 (2021)............................6

## I.      INTRODUCTION

*Generative AI* is the name given to a new category of software products—like those made by defendant OpenAI that are at the center of this lawsuit. The most distinctive feature of generative AI products is that they derive all their value from copyright infringement and other violations of federal and state law on a staggering and unprecedented scale. During the phase euphemistically called *training*, a generative AI system copies vast numbers of works in their entirety and then extracts copyrighted expression from them. This expression is stored in a software artifact called a *model*. This model is designed to do one thing: imitate the expression found in the infringed works.

Evaluating the legality of a generative AI product therefore requires examining each step in this sequence: (1) the copying and ingestion of works and author names during training; (2) the status of the model itself as a derivative work; and (3) the output generated by the model. Though AI proponents like to resort to metaphors, a generative AI system does not "learn like a human"—it is software. The product has no independent legal status.

In economic terms, because of its reliance on massive copyright infringement, generative AI is primarily a device for extracting value from the copyrighted assets of authors to line the pockets of companies like OpenAI. In this case, the copyrighted works of a class of millions of individual creators—including the four representative Plaintiffs, who are accomplished book authors—have been misappropriated by OpenAI without consent, credit, or compensation, with the goal of enriching itself.

But there's one major obstacle in OpenAI's path: the federal and state laws of the United States. Plaintiffs seek to redress the illegality and inequity of OpenAI's generative AI products, and challenge OpenAI's position that it should be allowed to train its generative AI products using anyone's name and copyrighted literary works, without consent, for free, forever. Plaintiffs contend that in so doing, OpenAI has violated federal and state laws. Plaintiffs' complaint alleges the facts that give rise to their claims in copious detail and plead with requisite specificity each element of Plaintiffs' causes of action.

Tellingly, OpenAI has not moved to dismiss Plaintiffs' direct copyright-infringement claim. Nevertheless, OpenAI still tries to leverage its motion to pre-litigate issues it thinks will carry the day in the future. This is improper on a motion to dismiss and should be disregarded.

Even so, some of OpenAI's distortions of both Plaintiffs' allegations and the law are sufficiently off-base that they demand a response. For instance, OpenAI seeks to rewrite Ninth Circuit copyright law in its favor by claiming that substantial similarity is an essential element for Plaintiffs' claim. But, as Plaintiffs allege, this is a case about direct copying. As the Ninth Circuit has held, substantial similarity is deployed as an alternative theory of liability only in cases where evidence of direct copying is unavailable. Here, Plaintiffs specifically allege direct digital copying of their entire copyrighted works. Similarly, OpenAI telegraphs a future fair-use argument. But fair use is an affirmative defense. It is not properly considered as part of a motion to dismiss. Moreover, OpenAI's construction of fair use is at odds with settled precedent and if adopted here would overrule that precedent, entirely swallowing U.S. copyright.

Even where OpenAI contests Plaintiffs' claims on the merits, its arguments fall short. OpenAI argues that Plaintiffs' vicarious infringement claim fails. But Plaintiffs have provided ample facts supporting each element of the claim. Plaintiffs have alleged infringement by third-parties, i.e., Chat GPT's users; OpenAI's right to stop the conduct; and OpenAI's financial interest in the infringement. This is also true for Plaintiffs' DMCA claim because Plaintiffs' have alleged facts demonstrating that OpenAI designed ChatGPT to remove and alter CMI with knowledge that the CMI's removal enabled further infringement. And Plaintiffs state valid California law claims too. OpenAI's motion to dismiss may be long on rhetoric, but it is inconsistent with basic pleading rules. It is short on substance. OpenAI's motion should be denied.

## II.   FACTUAL BACKGROUND

Plaintiffs Paul Tremblay, Sarah Silverman, Christopher Golden, and Richard Kadrey are accomplished book authors. Tremblay Compl. ¶ 10; Silverman Compl. ¶¶ 10–12. They each hold registered copyrights in one or more books.[1] Plaintiffs hold copyright registrations for these specific works. Tremblay Compl. ¶ 12 & Ex. A; Silverman Compl. ¶ 13 & Ex. A. Each of the Plaintiffs' books include copyright-management information, such as the books' title, the ISBN number, their name,

---

[1] Tremblay wrote *The Cabin at the End of the World*. Tremblay Compl. ¶ 10. Silverman wrote *The Bedwetter*. Silverman Compl. ¶ 10. Golden wrote *Ararat*. Silverman Compl. ¶ 11. Kadrey wrote *Sandman Slim*. Silverman Compl. ¶ 12.

1   and terms of use. Tremblay Compl. ¶ 25; Silverman Compl. ¶ 26.

2       Defendant OpenAI[2] creates and sells generative artificial-intelligence ("AI") software products.

3   Tremblay Compl. ¶ 22; Silverman Compl. ¶ 23. Certain generative-AI products created and sold by

4   OpenAI are known as *large language models* ("LLM"). Tremblay Compl. ¶ 23; Silverman Compl. ¶ 24.

5   An LLM is a software program designed to parse and emit natural language. Tremblay Compl. ¶ 23;

6   Silverman Compl. ¶ 24. An LLM derives its abilities from being "trained" on massive numbers of

7   textual works, copied from various sources and fed into the language models. Tremblay Compl. ¶ 23;

8   Silverman Compl. ¶ 24. During training, the LLM extracts expressive information from each textual

9   work in the training dataset. Tremblay Compl. ¶ 23; Silverman Compl. ¶ 24. At the end of this process,

10  the language model can emit convincing simulations of natural written language resembling what it

11  copied from the training dataset. Tremblay Compl. ¶ 23; Silverman Compl. ¶ 24.

12      A large portion of OpenAI's training dataset for its language models consists of books.

13  Tremblay Compl. ¶¶ 28–35; Silverman Compl. ¶¶ 29–36. Though OpenAI has not revealed the

14  specific titles, it has described the size of its book datasets, which are massive. Tremblay Compl. ¶ 31;

15  Silverman Compl. ¶ 32. Given the size of these book datasets, the most likely source of these books is

16  one or more of the notorious "shadow library" websites that host massive numbers of pirated texts that

17  are not in the public domain. Tremblay Compl. ¶ 34; Silverman Compl. ¶ 35. The book datasets used

18  by OpenAI for training language models included thousands of copyrighted books, including books

19  written by Plaintiffs. Tremblay Compl. ¶¶ 40-41; Silverman Compl. ¶¶ 41–42. The works were copied

20  in their entirety, without consent of the authors. Tremblay Compl. ¶ 55; Silverman Compl. ¶ 56. In

21  addition, OpenAI's LLMs are entirely dependent on the expressive information extracted from

22  Plaintiffs' works. Because that information is retained inside them, and there is a direct relationship

23  between the expressive information directly copied from the copyrighted works and the OpenAI

24  language models LLMs, they are themselves infringing derivative works. Tremblay Compl. ¶ 56;

25

26  [2] "OpenAI" collectively refers to Defendants OpenAI, Inc., OpenAI, L.P., OpenAI OpCo, L.L.C.,
    OpenAI GP, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund GP I, L.L.C., and OpenAI

27  Startup Fund Management, LLC. Since filing this action, Plaintiffs have been made aware of another
    OpenAI entity called OpenAI Global, LLC. Plaintiffs plan to amend the complaint in the future to add

28  OpenAI Global, LLC as a defendant.

Silverman Compl. ¶ 57. Also, because the OpenAI language models are infringing derivative works based on copyrighted works—including Plaintiffs'—the textual outputs of those models are likewise infringing derivative works. Tremblay Compl. ¶ 59; Silverman Compl. ¶ 60.

## III.    ARGUMENT

A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly,* 550 U.S. at 569 n.14, 570. The statements alleged in the complaint must provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 545; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.") "The court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Moreover, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (citation omitted).

### A.    OpenAI concedes that Plaintiffs have adequately alleged a direct copyright-infringement claim

The core claim in Plaintiffs' complaint is Count I, for direct copyright infringement. OpenAI has **not** moved to dismiss this claim. MTD at 8. Of course, Plaintiffs accept the concession. Still, despite the concession, OpenAI attempts to pre-litigate issues not before the Court. OpenAI then offers the Court a strange mini-treatise on copyright law in an obvious attempt to prime the Court for an argument it will make later. The Court should, of course, ignore OpenAI's meanderings—after all, the Court's review on a motion to dismiss "is generally limited to the four corners of the complaint." *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122, 1134 (N.D. Cal. 2015) (citation omitted). But some of OpenAI's subsequent contentions of law are so wildly off the mark—

1    and so mischaracterize Plaintiffs' allegations—that they demand a response.

2            1.      **OpenAI's misleading and self-serving reframing of the U.S. Copyright Act**

3            Even though it is not contesting Plaintiffs' direct copyright-infringement claim, OpenAI derides

4    Plaintiffs' theory of liability with the remark "That is not how copyright law works." MTD at 3–4. At

5    least OpenAI isn't hiding the ball. OpenAI is clearly signaling its intent to unilaterally rewrite U.S.

6    copyright law in its favor—starting now.

7            a.      **The Copyright Act serves the public interest primarily by granting**
                       **rights to authors**
8

9            The Copyright Act "promote[s] the Progress of Science and useful Arts" by fostering a

10   virtuous cycle of authorship of works and public consumption of those works. U.S. Const., Art. I, § 8,

11   cl. 8. The Supreme Court has confirmed this view: "the Copyright Act's primary objective is to

12   encourage the production of original literary, artistic, and musical expression for the public good".

13   *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *see also Andy Warhol Found. for the Visual Arts Inc.  v.*

14   *Goldsmith*, 143 S.Ct. 1258, 1273 (2023) ("The Copyright Act encourages creativity by granting to the

15   creator of an original work a bundle of rights") (citation omitted).

16           The false premise often advanced by those seeking to weaken copyright—including OpenAI—

17   is that copyright's dual objectives of rewarding the author of a work and allowing the public to benefit

18   from that work are largely separate. No—and this has never been so. Rather, the exclusive rights

19   granted to authors under section106 of the Copyright Act provide the necessary incentives to create

20   and sustain a vigorous market of copyrighted works. *Fogerty*, 510 U.S. at 517. It is the very existence of

21   this market that primarily serves "the public good" *Id*. Suppose we removed the incentives provided by

22   the Copyright Act. We would not end up with the same set of books. Instead, most authors would have

23   insufficient incentive to write. Their books would never be written, and readers would be poorer for it.

24   In colloquial terms, copyright is a win–win for creators and the public: it leads to a vigorous

25   marketplace of copyrighted works for us to enjoy, on terms set by the copyright holders.

26           b.      **The Copyright Act secondarily serves the public interest through**
                       **fair use**
27

28           Uninvited, OpenAI launches into an exegesis on fair use. MTD at 7-8. Fair use, of course, is an

important—yet limited—feature of U.S. copyright law. 17 U.S.C. § 107; *Andy Warhol Found.*, 143 S. Ct. at 1282 (rejecting construction of fair use that "would swallow the copyright owner's exclusive right to prepare derivative works"). Importantly, however, fair use is an affirmative defense, and is "inappropriate to resolve on a motion to dismiss." *Ferrero S.p.A. v. Imex Leader, Inc.*, No. 817CV02152DOCKESX, 2018 WL 11346538, at *15 (C.D. Cal. May 8, 2018) (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)); *see Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (explaining "fair use is an affirmative defense"). Given that, OpenAI's arguments regarding fair use are wholly misplaced.

In any event, as described in the previous section, fair use is **not** the primary means by which the public benefits from copyrighted works. Because fair use forgives certain uses of copyrighted works that would otherwise violate an author's exclusive rights under 17 U.S.C. § 106, fair use only indirectly supports "the Copyright Act's primary objective" of "encourag[ing] the production of original" works. *Fogerty*, 510 U.S. at 517. Put another way, Plaintiffs and other authors do not write and release new books merely so those books can be the targets of fair use. That would be economically irrational.

Contrary to widespread urban legend in the AI industry, no U.S. court has squarely ruled on the question of whether training an AI model with copyrighted expression is fair use.[3] On the contrary, one law-review article on the subject has taken the position that "[w]hen learning is done to copy expression . . . the question of fair use can—and should—become much tougher." Mark A. Lemley & Bryan Casey, *Fair Learning*, 99 Tex. L. Rev. 743, 750 (2021).

> c.  **Copyright infringement does not require a showing of "substantial similarity" in cases involving direct copying**

One of the OpenAI's most curious contentions is the assertion that "Substantial Similarity Is Required for Infringement." MTD at 7. But that is not the law in the Ninth Circuit. As the Ninth Circuit has explained, "'[s]ubstantial similarity' is not an element of a claim of copyright infringement. Rather, it is a doctrine that [allows the finder of fact to determine or] adjudicate whether copying of the

---

[3] Indeed, mere days ago, a district court confronted with dueling summary judgment motions determined that the ultimate conclusion on whether or not the use of copyrighted material to train a generative AI model is fair use "must go to a jury." *Thomson Reuters Enter. Ctr. GMBH v. Ross Intelligence Inc.*, ___ F. Supp. 3d ___, 2023 WL 6210901, at *6 (D. Del. Sep. 25, 2023).

'constituent elements of the work that are original' actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it *in toto*." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012).

This holding is the law of this Circuit and binds the Court. District courts across this circuit have cited this holding. *See, e.g.*, *YellowCake, Inc. v. DashGo, Inc*, No. 1:21-CV-0803 AWI BAM, 2022 WL 172934, at *4 (E.D. Cal. Jan. 19, 2022); *Ross-Nash v. Almond*, No. 2:19-cv-00957-APG-NJK, 2020 WL 6947691, at *2 (D. Nev. Oct. 28, 2020); *Cellular Accessories for Less, Inc. v. Trinitas LLC*, 65 F. Supp. 3d 909, 915-16 (C.D. Cal. 2014); *Bravado Int'l Grp. v. Merch. Servs., Inc.*, No. CV 13-01032 MMM (JCGx), 2014 WL 12579810, at *7 (C.D. Cal. June 20, 2014). This principle is observed with approval in courts outside this Circuit as well. *See, e.g.*, *KaZee, Inc. v. Callender*, No. 4:19-CV-31-SDJ, 2020 WL 994832, *7 (E.D. Tex. Mar. 2, 2020) (denying Rule 12(b)(6) challenge in a "case that involves direct evidence of copying").

Thus, in cases that involve direct, wholesale digital copying of copyrighted works—such as this one—the substantial-similarity test is a "red herring" because "the proper question is whether [infringement] occurred *vel non*." *Range Rd. Music,* 668 F.3d at 1154; *see also Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1163-64 (N.D. Cal. 2014) ("Absent evidence of direct copying", the plaintiff must show access and substantial similarity) (citation omitted). OpenAI's call to revise the Copyright Act to enact a substantial-similarity test in every case is likewise a "red herring." *Range Rd. Music,* 668 F.3d at 1154.

### 2.   Plaintiffs assert three theories of direct copyright infringement

As explained above, OpenAI's contention that substantial similarity is a mandatory feature of all copyright-infringement claims is flat wrong. OpenAI is also wrong that substantial similarity applies in this particular case, because Plaintiffs' copyright-infringement claims arise from OpenAI's direct copying of their works. Plaintiffs' complaint pleads facts constituting claims under three distinct theories of copyright infringement, all of which flow from OpenAI's direct copying of entire copyrighted works.

#### a.   "Training" or "input" infringement

OpenAI copied Plaintiffs' books and fed them to its language models as training data. Tremblay Compl. ¶¶ 40–41; Silverman Compl. ¶¶ 41–42. Though OpenAI has not revealed where it got those

books, the most likely source is one or more of the notorious "shadow library" websites that host vast numbers of pirated literary works, including books. Tremblay Compl. ¶ 34; Silverman Compl. ¶ 35. Under this theory, no showing of substantial similarity is necessary, because the works were copied in their entirety, without consent of the authors. Tremblay Compl. ¶ 55; Silverman Compl. ¶ 56.

### b. "Model" infringement

Because OpenAI's LLMs are entirely dependent on the expressive information extracted from Plaintiffs' works (and others) and retained inside them, these LLMs are themselves infringing derivative works. Tremblay Compl. ¶ 56; Silverman Compl. ¶ 57. Under this theory, no showing of substantial similarity is necessary, because Plaintiffs have specifically alleged the relationship between the expressive information directly copied from the copyrighted works and the OpenAI LLMs.

### c. "Output" infringement

Because the OpenAI language models are infringing derivative works based on copyrighted works—including Plaintiffs'—the textual outputs of those models are likewise infringing derivative works. Tremblay Compl. ¶ 59; Silverman Compl. ¶ 60. This type of direct copyright infringement is also the predicate for Plaintiffs' vicarious-infringement claim.

OpenAI strenuously opposes this output-infringement theory. Although OpenAI's arguments are improper for consideration at this juncture, Plaintiffs briefly comment on OpenAI's errors.

First, OpenAI argues that Plaintiffs' output theory of infringement must fail because "Plaintiffs make no attempt to explain how or why any particular outputs are substantially similar to their books." MTD at 9. But as discussed above, OpenAI's preoccupation with substantial similarity is wrong as a matter of law. It bears repeating: "'[s]ubstantial similarity' is not an element of a claim of copyright infringement" in cases based on direct copying, such as this one. *Range Rd. Music*, 668 F.3d at 1154.

OpenAI also mischaracterizes Plaintiffs' allegations when it says that the connection between the training data and the outputs is "remote and colloquial," and therefore the outputs cannot qualify as derivative works. MTD at 9. OpenAI cites *Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984). *Litchfield* holds that "[a] work is not derivative unless it has been substantially copied from the prior work." *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984). But consistent with *Litchfield*, Plaintiffs have specifically alleged direct, substantial copying and how the steps in the chain fit together.

First, their works were ingested in their entirety during training, constituting an initial massive act of copyright infringement. Tremblay Compl. ¶ 55; Silverman Compl. ¶ 56. Next, OpenAI created LLMs that harvested expressive information from the training data. These models are themselves infringing derivative works. Tremblay Compl. ¶ 56; Silverman Compl. ¶ 57. Finally, these infringing LLMs have been used to generate outputs that do nothing more than recombine expressive information extracted from the training data. Tremblay Compl. ¶ 59; Silverman Compl. ¶ 60. In sum, the expressive information extracted from the copyrighted training data is an indispensable basic ingredient throughout the algorithmic software process of an LLM. If, as OpenAI contends, the outputs of an LLM are not derivative works, this Court should ask OpenAI where in this algorithmic process the Plaintiffs' copyrighted works are magically alchemized into entirely noninfringing outputs.

*Litchfield* can be distinguished because it was an indirect-copying case that relied on substantial similarity. Whereas in copyright-infringement cases involving direct copying, "the fact that the final result of defendant's work differs from plaintiff's work is not exonerating." *ITC Textile Ltd. v. Wal-Mart Stores Inc.*, No. CV122650JFWAJWX, 2015 WL 12712311, at *5 (C.D. Cal. Dec. 16, 2015). On the contrary, a difference between the works can be even *more* incriminating as a copyright matter: "it can show infringement of multiple exclusive rights, such as unauthorized reproduction and unauthorized creation of a derivative work." *Id*. In *ITC Textile*, the plaintiffs created copyrighted images that were directly copied and later altered as part of certain derivative works (namely garments). *Id.* The court rejected the defendant's invitation to apply a substantial-similarity analysis, because the images on the garments, though altered, had originated from direct copying. *Id.* Those are also the facts here. Tremblay Compl. ¶¶ 55, 56, 59; Silverman Compl. ¶¶ 56, 57, 60.[4]

OpenAI opposes this theory of infringement primarily through *reductio ad absurdum*: "According to the Complaints, every single ChatGPT output—from a simple response to a question

---

[4] *Litchfield* can be distinguished in two other ways. First, though the *Litchfield* plaintiff did not prevail, those facts were much different. There, the plaintiff claimed that the Universal motion picture *E.T. The Extra-Terrestrial* was an infringing derivative work based on "Lokey from Maldemar", her one-act musical play about two aliens. But she was unable to draw any specific connections between her play and Universal's movie that would show that her play had been "substantially copied". *Litchfield*, 736 F.2d at 1357. Whereas in this case, Plaintiffs have alleged the necessary substantial copying throughout. Tremblay Compl. ¶¶ 55, 56, 59; Silverman Compl. ¶¶ 56, 57, 60.

(*e.g.*, "Yes"), to the name of the President of the United States . . . is necessarily an infringing 'derivative work' of Plaintiffs' books". MTD at 3. Not so. Plaintiffs allege direct copying and plead sufficient facts to support such a claim. OpenAI does not even mention, let alone grapple with, the direct-copying cases, including *Range Rd. Music* and *ITC Textile*. OpenAI suggests that Plaintiffs' theory of output infringement is overly expansive. MTD at 3. But OpenAI's conclusory theory of noninfringement is no less expansive. Defendants infringed Plaintiffs' copyrights by copying, secretively and without authorization, Plaintiffs' copyrighted works from pirated databases to create a product being sold to replace the very writings it copied.

### B.    Plaintiffs adequately allege a claim for vicarious copyright infringement

Plaintiffs also assert a claim for vicarious copyright infringement. This requires the allegation of a "direct infringement" by a third party where the defendant "declin[es] to exercise a right to stop or limit" the infringement and retains "a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). Plaintiffs have properly pleaded this claim too.

**Direct third-party infringement**. As fully explained in the previous section, Plaintiffs allege that "every output of the OpenAI Language Models is an infringing derivative work." Tremblay Compl. ¶ 59; Silverman Compl. ¶ 60. Because these infringing outputs are initiated by third parties— namely, customers for OpenAI's language models—these outputs constitute the direct infringements that are the predicate for the vicarious-infringement claim against OpenAI itself. *See China Cent. Television v. Create New Tech., (HK) Ltd.*, No. CV 15-01869 MMM (AJWx), 2015 WL 12732432, at *11 (C.D. Cal. Dec. 7, 2015) (finding claim stated for vicarious and contributory infringement where "[defendants'] entire business model is based on generating profit from widespread infringement of plaintiffs' programming").

**OpenAI's right to stop the infringing conduct**. OpenAI wrongly argues that Plaintiffs have failed to make out this element of the claim. MTD at 10. On the contrary, Plaintiffs allege that "OpenAI creates and sells artificial-intelligence software products." Tremblay Compl. ¶ 22; Silverman Compl. ¶ 23. And in particular, that "ChatGPT is a software product created, maintained, and sold by OpenAI." Tremblay Compl. ¶ 1; Silverman Compl. ¶ 1. Plaintiffs allege in detail various facts—gleaned

from papers published by OpenAI itself—about OpenAI's selection of training data for its language models. Tremblay Compl. ¶¶ 23–35; Silverman Compl. ¶¶ 24–36. Because OpenAI created and released ChatGPT and its underlying LLMs, and exclusively control how all these products work, it can be plausibly inferred—and is necessarily true—that OpenAI has always had the "right to stop" the respective infringement. *See, e.g.*, *Range Rd. Music*, 668 F.3d at 1153 (finding that plaintiff "pleaded specific facts to raise a plausible inference" that defendants exercised control over the venue that undertook the infringing act); *see also China Cent. Television*, 2015 WL 12732432, at *11 (finding direct financial benefit where "Plaintiffs allege that defendants manufacture, distribute, maintain and market the [infringing products] with the object of promoting their use to infringe plaintiffs' copyrighted [works]"). For example, it can be plausibly inferred that OpenAI could have ensured its language models were only trained on licensed training data, or just turned the models off. OpenAI chose not to do either. These facts are sufficiently pleaded.

**OpenAI's financial interest in the infringing activity**. Despite OpenAI's rhetoric (MTD at 11), the Complaint plainly sets forth ample facts regarding OpenAI's financial interest in the infringing activity. Plaintiffs have alleged that OpenAI used their copyrighted Works as fodder to train ChatGPT. Tremblay Compl. ¶¶ 40-41; Silverman Compl. ¶¶ 41–42. That fact alone is sufficient to make out this element. *See Thomson Reuters*, 2023 WL 6210901, at *6 ("Ross does not contest that it had a financial interest in the alleged copies—it used the Bulk Memos to train AI, its core product."). But Plaintiffs allege much more—Plaintiffs allege in detail how OpenAI "profits richly from the use of Plaintiffs' and Class members' copyrighted materials."[5] Tremblay Compl. ¶ 6; Silverman Compl. ¶ 6. These allegations clearly set out financial interest in the infringing activity. See *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) ("[f]inancial benefit exists where the availability of infringing material acts as a draw for customers.'").

---

[5] *See, e.g.*, Tremblay Compl. ¶ 6; Silverman Compl. ¶ 6; Tremblay Compl. ¶ 37; Silverman Compl. ¶ 38 ("ChatGPT is a language model created and sold by OpenAI . . . OpenAI offers ChatGPT through a web interface to individual users for $20 per month."); Tremblay Compl. ¶ 37; Silverman Compl. ¶ 38 ("OpenAI also offers ChatGPT to software developers through an application-programming interface (or "API") . . . Access to ChatGPT via the API is billed on the basis of usage").

### C.    Plaintiffs adequately allege a claim under DMCA § 1202(b)

Section 1202(b) of the DMCA imposes liability for the removal or alteration of copyright management information ("CMI").[6] 17 U.S.C. § 1202(b); *Doe 1 v. GitHub, Inc.*, ___ F. Supp. 3d ___, 2023 WL 3449131, at *11 (N.D. Cal. May 11, 2023). Section 1202(c), which describes protected categories of CMI, has been interpreted broadly. *See Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *3 (C.D. Cal. Feb. 12, 2015); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102 (N.D. Ill. 2014). The pleading burden under the DMCA is low. *See Mollman v. Zoetop Bus. Co.*, No. CV 22-4128 PA (GJSx), 2022 WL 17207103, at *3 (C.D. Cal. Sep. 16, 2022) (burden is "not as exacting" at the pleading stage).

"Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)." *Merideth v. Chi. Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). As recognized by the Ninth Circuit, "direct proof of one's specific wrongful intent is rarely available" and such intent can be inferred through circumstantial evidence. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016). For purposes of pleading § 1202(b)'s mental state requirements, "'intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1063 (N.D. Cal. 2022) (citations omitted). Further, "[n]othing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit. While a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for copyright infringement, claims under the DMCA, however, are simply not copyright infringement claims and are separate and distinct from the latter." *Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003).

A DMCA claim does not require proof of infringement. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 950-52 (9th Cir. 2010) (rejecting infringement nexus requirement for DMCA claims). Thus, fair use is not a defense. *See Murphy v. Millennium Radio Grp.*, CIV.A. 08-1743 MAS, 2015 WL

---

[6] Section 1202(c) provides, in pertinent part, "[a]s used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work[.]"

419884, at *5 (D.N.J. Jan. 30, 2015) ("A claim under § 1202(b) does not necessarily attack non-infringing fair uses of copyrighted works—it targets conduct that does harm to identifying information that helps to protect the copyright holder, such as CMI."); *see also Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019) ("a DMCA action under section 1202(b) is not an action for infringement").

A claim for a CMI violation under the DMCA requires the plaintiff to plead: "(1) the existence of CMI on the infringed work, (2) removal or alteration of that information, and (3) that the removal or alteration was done intentionally." *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1286-87 (C.D. Cal. 2022). The plaintiff must also plead the requisite scienter. *Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561, at *3-4 (N.D. Cal. Mar. 26, 2019). Scienter, however, need not be alleged with specificity. *Id.*; Fed. R. Civ. P. 9(b) ("intent, knowledge, and other conditions of a person's mind may be alleged generally").

### 1.   Plaintiffs have pleaded all the elements of a DMCA § 1202(b) violation

As set forth below, Plaintiffs have pleaded all the requisite elements of a DMCA violation:

**Existence of CMI**. Plaintiffs specifically allege that their works contained CMI, including the book's title, the ISBN number or copyright number, the copyright holders name, terms of conditions and use, name of the authors and the year of publication. Tremblay Compl. ¶¶ 10-12; Silverman Compl. ¶¶ 10-13; *see also* Tremblay Compl. ¶ 25; Silverman Compl. ¶ 26. Each is recognized as CMI. *See* 17 U.S.C. § 1202(c)(2), (3), (6); *see also Logan*, 636 F. Supp. 3d at 1063 (finding that the creator's name, title of the work, "and a link to a Creative Commons website . . . setting forth the terms and conditions for use'" constituted CMI). Additionally, Plaintiffs have alleged that CMI was incorporated directly into their works. Tremblay Compl. ¶¶ 10-12; Silverman Compl. ¶¶ 10-13. *see also Logan*, 636 F. Supp. 3d at 1063 ("[I]dentifying information . . . provided. . . beneath each [work]" "sufficiently close to qualify as CMI.")

**Distribution of CMI.** Plaintiffs allege that "[w]ithout the authority of Plaintiffs and the Class, OpenAI copied the Plaintiffs' Infringed Works and used them as training data for the OpenAI Language Models." Tremblay Compl. ¶¶ 64, 65; Silverman Compl. ¶¶ 65, 66. Indeed, ChatGPT was designed by OpenAI to not preserve any CMI as output. Therefore, OpenAI intentionally removed

1  CMI from the Plaintiffs' Infringed Works in violation of 17 U.S.C. § 1202 (b)(1).

2      **Distribution of copied works.** Plaintiffs allege OpenAI distributed copies of the Works.

3  Tremblay Compl. ¶ 65; Silverman Compl. ¶ 66 ("Without the authority of Plaintiffs and the Class,

4  Defendants created derivative works based on Plaintiffs' Infringed Works. By distributing these works

5  without their CMI, OpenAI violated U.S.C. § 1202 (b)(3)."). Indeed, as Plaintiffs allege, the point of

6  ChatGPT is to generate answers to user prompts. Tremblay Compl. ¶ 38; Silverman Compl. ¶ 39. If a

7  user asks for a summary or snippets of a copied work, ChatGPT will comply. *Id.*

8      **Knowing removal of CMI**. Plaintiffs allege that OpenAI knowingly removed or altered CMI

9  from Plaintiffs' Works. OpenAI trained its large language models by "copying massive amounts of text

10  from various sources [including Plaintiff's works] and feeding these copies into the model. . . . During

11  training, the large language model copies each piece of text in the training dataset and extracts

12  expressive information from it." Tremblay Compl. ¶ 23; Silverman Compl. ¶ 24. Further, as alleged,

13  ChatGPT never reproduced any CMI that Plaintiffs included with their works. Tremblay Compl. ¶ 41;

14  Silverman Compl. ¶ 42. Indeed, that was the point, as Plaintiffs allege the training process by design

15  does not preserve any CMI. Tremblay Compl. ¶ 64; Silverman Compl. ¶ 65.

16      **Knowingly enabling infringement.** Plaintiffs allege OpenAI knew or had reasonable grounds

17  to know that its distribution would induce, enable, or conceal an infringement, either by itself or its

18  users. "[A] defendant's awareness that distributing copyrighted material without proper attribution of

19  CMI will conceal *his own* infringing conduct satisfies the DMCA's second scienter requirement."

20  *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020); *see also id.* ("Section 1202(b)(3) also

21  encompasses 'an infringement' that, upon distribution 'will . . . conceal' the fact of **that**

22  **infringement**.") (emphasis added). This so-called second scienter element is evidenced by OpenAI's

23  conscious and telling failure to reveal which internet book corpora ChatGPT is trained on. Tremblay

24  Compl. ¶¶ 31–32; Silverman Compl. ¶¶ 32–33. Concealing the source of the book corpora upon which

25  the OpenAI language models are trained conceals whether or not that training material was permissibly

26  used. As such, any user prompting ChatGPT cannot determine whether any output is infringing or not,

27  i.e., any subsequent infringement by ChatGPT would be nearly undetectable, particularly by an

28  unknown user of ChatGPT. And, as Plaintiffs allege, based on the volume of text OpenAI models

1  trained on, the only book corpora that have ever offered such volume are shadow libraries which

2  contain books obtained under dubious means. Tremblay Compl. ¶¶ 28-34; Silverman Compl. ¶¶ 29-35.

3       OpenAI raises several attacks on Plaintiffs' claim. Each fail.

4       **First,** OpenAI argues that "Plaintiffs make no attempt to explain how that omission could

5  'induce, enable facilitate, or conceal' the alleged copyright infringement, much less how OpenAI could

6  have 'known[]' that it would do so." MTD at 15-16 (citing *Fashion Nova, LLC v. Blush Mark, Inc.*, No.

7  CV 22-6127 PSG (RAO), 2023 WL 4307646, at *5 (C.D. Cal. June 30, 2023)). OpenAI argues that,

8  "[i]n other words, the incidental removal of CMI does not raise an inference that the defendant knew

9  its actions would conceal infringement." MTD at 13 (citing *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d

10  1116, 1122 (C.D. Cal. 1999) & *Logan,* 636 F. Supp. 3d at 1064). OpenAI's argument is misplaced.

11       At the motion to dismiss stage, a plaintiff need only "allege sufficient facts to support the

12  *reasonable inference* that the defendant 'knew or had a reasonable basis to know that the removal or

13  alteration of CMI . . . w[ould] aid infringement." *Doe 1*, 2023 WL 3449131, at *12 (quoting *Harrison v.*

14  *Pinterest, Inc.*, No. 20-cv-05290-EJD, 2022 WL 4348460, at *5 (N.D. Cal. Sept. 19, 2022)). Further,

15  the Ninth Circuit has consistently held that scienter for the DMCA can be inferred through

16  circumstantial evidence. *Friedman*, 833 F.3d at 1189. Plaintiffs' allegations plainly support the

17  reasonable inference OpenAI knew that their removal of CMI would aid infringement. Critically,

18  OpenAI has never revealed the source of its training material, meaning that no user of ChatGPT or any

19  other OpenAI language model can know if the output they adduce are infringing. Tremblay Compl.

20  ¶¶ 28-34; Silverman Compl. ¶¶ 29-35. And after all, since OpenAI chose what to train its models on, it

21  can be inferred that it had knowledge about whether the provenance of that material was proper or not.

22  *See GC2 v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 842 (N.D. Ill. 2019)

23  ("Likewise, the jury could infer that IGT Holding, IGT NV, and Doubledown knew or should have

24  known that their unlicensed distribution of artwork missing copyright management information to their

25  customers could lead their customers to infringe [plaintiffs'] copyrights".

26       **Second,** OpenAI incorrectly argues, without support, that if the CMI was "removed from the

27  internal dataset" that it would have "no effect on the public at all" and thus, they could not possibly

28  have induced, enabled facilitated, or concealed infringement at all. This is not the correct standard.

Nowhere in the statute or in this Circuit's caselaw does scienter require that the public need have knowledge that CMI was removed.[7] Indeed, innocent users of the ChatGPT function have no way of knowing that ChatGPT's output is itself derived from copyrighted works whose CMI is removed and are thus infringing. In so doing, it conceals further infringement—precisely what the statute forbids.[8]

**Third,** OpenAI claims that Plaintiffs' § 1202(b)(3) claim fails because the infringing work is not "identical." *See* MTD at 17-18. But § 1202(b) has no requirement that the copy from which CMI is removed be identical. *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) ("[T]he definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work."). Critically, as revealed by a careful reading of the cases cited by OpenAI, identicality is only a proxy for cases where copying needed to be inferred. For example, in *Frost-Tsuji Architects v. Highway Inn, Inc.*, Civil No. 13-00496 SOM/BMK, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015), as revealed by that court's earlier summary judgment opinion, the court determined that the architectural plans as issue "could have been created by redrawing Frost-Tsuji's plans and not including Frost-Tsuji's copyright management information[.]" *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014). Similarly, in *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463-RGK-MAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022), the court plainly stated that "[t]he differences between the parties' products *undercut any inference* that Defendants removed or altered Plaintiff's CMI." *Id.* at *4. Here, Plaintiffs allege that their Works were *directly copied*, CMI

---

[7] *Fashion Nova*, 2023 WL 4307646, cited by OpenAI, involved CMI which was ambiguous, for example, the sample file name "FN" which "d[id] not directly identify Fashion Nova . . . ." *Id.* at *5.

[8] OpenAI's other cases are distinguishable. OpenAI relies on *Kelly*, 77 F. Supp. 2d 1116, but *Kelly* involved photographs which were crawled from the plaintiff's website and converted to thumbnail images but "Defendant's users could obtain a full-sized version of a thumbnailed image by clicking on the thumbnail." *Id.* at 1122. Here, once a user induces an infringing output, there is no method to access or otherwise see the original work and the associated CMI. *Logan*, 636 F. Supp. 3d 1052, in turn involved CMI that was "listed directly below" each infringed photograph. *Id.* at 1064. Here, the CMI in question is located in each book, which is part and parcel of the work itself. *E.g.*, Tremblay Compl. ¶¶ 10-12; Silverman Compl. ¶¶ 10-13 (stating that each book in question "contains the copyright-management information customarily include in published books, including the name of author and the year of publication"); *see also* Tremblay Compl. ¶ 25; Silverman Compl. ¶ 26. To the extent *Logan* involved third parties embedding the work at issue without CMI, 636 F. Supp. 3d at 1064, this too is distinguishable—here, OpenAI itself chose what material to upload, not unknown third parties. Tremblay Compl. ¶¶ 28-30; Silverman Compl. ¶¶ 29-31.

included. No inference is necessary to conclude that CMI was removed or altered.[9]

### D.     Plaintiffs set forth California state-law claims

#### 1.     Plaintiffs' California state-law claims are not preempted

OpenAI argues that Plaintiffs' negligence and unjust enrichment claims are preempted by Section 301 of the Copyright Act. MTD at 22-24; *see also* 17 U.S.C. § 301(a). OpenAI is mistaken. The Ninth Circuit has held that a state law tort claim concerning the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005). A district court in this very district has reaffirmed that principle. *See Doe 1*, 2023 WL 3449131, at *11 ("Plaintiffs are correct that state law tort claims concerning unauthorized use are not preempted by the Copyright Act."); *see also Thomson Reuters*, 2023 WL 6210901, at *12 ("Restricting a user's use of copyrighted material is different from limiting the user's ability to copy it. The latter is covered, and thus preempted, by the Copyright Act."). As plainly alleged in their Complaint, and as OpenAI itself acknowledges, Plaintiffs' state law claims are based on *use*, and not preempted.

The Ninth Circuit uses a two-part test to analyze whether the Copyright Act preempts a state law claim. *See Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1139 (9th Cir. 2006). Courts must first decide "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." "Second, assuming it does, [courts] determine 'whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.'" *Maloney v. T3 Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citations omitted, quoting *Laws*, 448 F.3d at 1137-38); *see also Firoozyle v. Earthlink Network*, 153 F. Supp. 2d 1115, 1122-23 (N.D. Cal. 2001). "'To survive preemption, the state cause of

---

[9] OpenAI has made this argument before in a similar case pending in this District. In *Doe 1 v. GitHub*, Case No. 22-cv-06823-JST, a case involving a generative AI code product, OpenAI moved to dismiss the plaintiffs' DMCA claims on, among other reasons, identicality grounds. *See, e.g.*, ECF Nos. 53 at 9-10 (OpenAI arguing that "[w]here a defendant makes a copy of a defendant's work that is substantially similar, but not identical, to the plaintiff's work, and omits CMI from that copy, there may be a claim for copyright infringement, but there cannot be a claim under § 1202") & 73 at 8-9 (OpenAI rearguing at reply that the DMCA requires identicality). The DMCA claim was sustained. *See Doe 1*, 2023 WL 3449131, at *11-13.

1   action must protect rights which are qualitatively different from the copyright rights,' and the 'state

2   claim must have an extra element which changes the nature of the action.'" *Software Freedom*

3   *Conservancy, Inc. v. Vizio, Inc.*, No. 8:21-cv-01943-JLS-KES, 2022 WL 1527518, at *3 (C.D. Cal. May

4   13, 2022); *accord Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 933 (N.D. Cal. 2009) (citation omitted).

5          As Plaintiffs allege in their Complaint (and as OpenAI concedes[10]), Plaintiffs' state law claims

6   are based on the unauthorized *use* of Plaintiffs' books for training ChatGPT. Tremblay Compl. ¶¶ 4,

7   82; Silverman Compl. ¶¶ 4, 83. Specifically, Plaintiffs allege that OpenAI has taken Plaintiffs' books

8   and used them to train ChatGPT without their consent. Tremblay Compl. ¶¶ 4, 24, 82; Silverman

9   Compl. ¶¶ 4, 25, 83. As Plaintiffs' Complaint alleges, it is that *use* that that underlies Plaintiffs'

10  California law claims and violates their rights; Plaintiffs' California law claims are not predicated on the

11  reproduction, distribution, performance, or any of the other exclusive rights brought under the

12  Copyright Laws. 17 U.S.C. § 106; *Doe 1*, 2023 WL 3449131, at *11; *see also Thomson Reuters*, 2023 WL

13  6210901, at *12 ("Restricting a user's use of copyrighted material is different from limiting the user's

14  ability to copy it. The latter is covered, and thus preempted, by the Copyright Act.").

15         Despite acknowledging that Plaintiffs' claims are about their works' unauthorized use, OpenAI

16  now contends that the unauthorized use is "functionally equivalent to the exclusive right to prepare

17  derivative works." MTD at 24. This argument is a stretch, at best. For purposes of the Plaintiffs' state

18  law claims, the rights Plaintiffs seek to vindicate is not the copying of their Works, but the unauthorized

19  use of those Works as training material for OpenAI's ChatGPT model, along with Plaintiffs' names.

20         *Doe 1 v. GitHub, Inc.*, 2023 WL 3449131 is instructive. *Doe 1* concerned programmers who were

21  challenging defendants' AI code-generating models. *Id.* at *1-2. The *Doe 1* defendants argued that the

22  plaintiffs' state law claims were preempted by the Copyright Act. *Id.* at *10. The court agreed with the

23  plaintiffs that "state law tort claims concerning unauthorized use are not preempted by the Copyright

24  Act" but found that the *Doe 1* plaintiffs' state law claims were preempted because the *Doe 1* plaintiffs

25  "d[id] not allege that Defendants' use of Plaintiffs' code for training purposes violated their rights,"

26

---

27  [10] MTD at 23 ("Plaintiffs explicitly state that both the negligence claims and the unjust enrichment claims are based on OpenAI's use of the 'Infringed Works,' *i.e.*, the books at issue in this lawsuit."); *see*

28  *also id.* ("Here, the negligence and unjust enrichment claims are predicated expressly on the 'us[e] [of] the Infringed Works to train ChatGPT.").

but rather "base[d] their unjust enrichment claim on Defendants' reproduction of Plaintiffs' code as output and Defendants' preparation of derivative works, both of which are right protected under the Copyright Act." *Id.* at *11.

Here, Plaintiffs have alleged that it was OpenAI's unauthorized use of their copyrighted Works and their names that violated their rights. The basis of the state law claims is not the reproduction and distribution of Plaintiffs' work, but the unauthorized use of Plaintiffs' works as the basis of the ChatGPT model from which OpenAI is enriching itself. Tremblay Compl. ¶ 82; Silverman Compl. ¶ 83. The unauthorized use prohibited by state law is a different interest than the reproduction and distribution prohibited by the Copyright Act. *See G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992) (finding no preemption where "Rasmussen claims a much different interest [than those in the Copyright Act], however: The right to *use* the STC [the work]"); *see also Venegas-Hernandez v. Asociacion de Compositores y Editores De Musica Latinoamericana (ACEMLA)*, 424 F.3d 50, 58 (1st Cir. 2005) (commenting with respect to the Copyright Act that "state law provides ample remedies where there is an unlawful authorization that causes harm without a listed infringing act" and suggesting unjust enrichment as one such cause of action).

### 2.    Plaintiffs state a claim under California's Unfair Competition Law

Defendants' argument that Plaintiffs have failed to state a claim under California's UCL is wrong. MTD at 18-20. Defendants correctly acknowledge that a UCL claim can be predicated on allegations of "unlawful," or "unfair," or "fraudulent" conduct. MTD at 18-19 (citing *Armstrong-Harris v. Wells Fargo Bank, N.A.*, No. 21-CV-07637-HSG, 2022 WL 3348426, at *2 (N.D. Cal. Aug. 12, 2022). Indeed, each of these three prongs of the UCL provides a distinct theory of liability. *Id.* But that is all Defendants get right. Defendant's argument that Plaintiffs fail to state a UCL claim fails **six** times over, and must be rejected.

First, Defendant is misleading in characterizing Plaintiffs' UCL allegations. Contrary to OpenAI's suggestion otherwise (MTD at 19), Plaintiffs allege OpenAI's conduct violated the "unfair" prong (Tremblay Compl. ¶ 71; Silverman Compl. ¶ 72) and the "fraudulent" prong (Tremblay Compl. ¶ 72; Silverman Compl. ¶ 73), in addition to the "unlawful" prong (Tremblay Compl. ¶ 70; Silverman Compl. ¶ 71). Plaintiffs allege violations of the UCL under each prong of the UCL as an independent

alternate theory. *Beilstein-Institute Zur Förderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.,* No. C 04-05368 SI, 2006 WL 3218719, at *4 (N.D. Cal. Nov. 7, 2006). California UCL claims can be alleged in the alternative. *Byton N. Am. Co. v. Breitfeld,* No. CV-19-10563-DMG ( JEMx), 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020).

Second, Plaintiffs adequately allege a DMCA violation as a predicate for their UCL claim under the "unlawful" prong. Tremblay Compl. ¶ 70; Silverman Compl. ¶ 71; *Cappello v. Walmart, Inc.,* 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019) (by proscribing "any unlawful" business act or practice, the UCL "borrows" violations of other laws and treats them as unlawful practices that the UCL makes independently actionable). Defendants' argument (MTD at 19) that Plaintiffs' DMCA allegations are insufficient here will fail and therefore Plaintiffs' California UCL claim can proceed based on their well pleaded DMCA claim. *See Doe 1,* 2023 WL 3449131, at *11 (upholding DMCA claim against OpenAI).

Third, Plaintiffs successfully allege a claim under the "unfair" prong of the UCL. Tremblay Compl. ¶ 71; Silverman Compl. ¶ 72. UCL claims can proceed under the "unfair" prong where plaintiff allege an immoral, unethical, oppressive, or unscrupulous business practice that causes injury which outweighs the utility of the practice. *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018). Plaintiffs allege Defendants misappropriated their books and names which they marketed and sold in their commercial AI product, ChatGPT. *See*, *e.g. Ojala v. Bohlin*, 178 Cal. App. 2d 292, 301 ( 1960) ("Unfair competition may consist of appropriating the property of another and selling it as one's own."). Plaintiffs identify, among others, how OpenAI used not just Plaintiffs' copyrighted books to train ChatGPT, but how they also scraped and incorporated Plaintiffs' names and other CMI into ChatGPT such that their names (or other identifying aspects of their work) can be utilized by third parties as prompts/parameters for ChatGPT's output without Plaintiffs' authorization or control.

Fourth, Plaintiffs' also allege a cause of action under the "fraudulent" prong. Tremblay Compl. ¶ 72; Silverman Compl. ¶ 73. A UCL claim may proceed under the "fraudulent" prong by showing that "members of the public are likely to be deceived." *Garcia v. Sony Comput. Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1062 (N.D. Cal. 2012). As alleged, OpenAI knowingly and secretively scraped Plaintiffs names and CMI for use as parameters in ChatGPT, along with their copyrighted books, from sources OpenAI knew were unauthorized databases of collected copyrighted books for inclusion in a generative AI

product. Tremblay Compl. ¶¶ 24–35; Silverman Compl. ¶¶ 25–36. OpenAI continues to obfuscate about the sources of data for ChatGPT's "learning." OpenAI intentionally and deceptively designed ChatGPT to output without any CMI or other credit to Plaintiffs and class members whose Works comprise ChatGPT's training dataset. Tremblay Compl. ¶ 72; Silverman Compl. ¶ 73. Plaintiffs further allege Defendants deceptively marketed their product in a manner that failed to attribute the success of their product to the copyright-protected work on which it is based. *Id.*

Fifth, contrary to Defendants' assertion otherwise (MTD at 19), Plaintiffs have plausibly alleged an economic injury from Defendants' violations of the UCL. A UCL claim may be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "[A] party must . . . (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 930 (N.D. Cal. 2013) (citation omitted). "A party who has lost money or property generally has suffered injury in fact." *Id.* (cleaned up, citation omitted).

Specifically, Plaintiffs allege OpenAI unfairly profits from and takes credit for developing a commercial product that generates ill-gotten profit based on unauthorized mass copying and high powered analysis of Plaintiffs intellectual property, and the sale to third parties of the ability the regenerate reproductions of Plaintiffs' and class members' stolen writings, using Plaintiffs' own names as parameters and prompts. Tremblay Compl. ¶ 71; Silverman Compl. ¶ 72. This is economic harm.

Further, Plaintiffs allege a deprivation of their intellectual property. The very purpose of the DMCA is to thwart in its incipiency the injury resulting from the immediate increased risk of future damage to intellectual property that results the moment a defendant removes CMI from digital copies of Plaintiffs' works—copies that can be reproduced and distributed online at near zero marginal cost in an instant. Indeed, such intellectual property rights are enshrined in Article I, Section 8, Clause 8 of the United States Constitution. *Int'l News Serv. v. Associated Press,* 248 U.S. 215, 250 (1918). "The creations which are recognized as property by the common law are literary, dramatic, musical, and other artistic creations"). Intellectual property is real property, and damaging it in the manner the

1    DMCA was meant to protect is real harm that results in damages where the ongoing risk of harm has

2    demonstrably materialized. *See Textile Secrets Int'l, Inc. v. Ya-Ya Brand, Inc.*, 524 F. Supp. 2d 1184, 1196,

3    1200 (C.D. Cal. 2007).

4           Sixth, Plaintiffs plead facts that justify relief under the UCL. Defendants' argument to the

5    contrary must be rejected. MTD at 20. The general rule, well-established in the Ninth Circuit, is that

6    plaintiffs may plead alternative claims, even if those claims are inconsistent. *See PAE Gov't Servs., Inc. v.*

7    *MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007). To the extent the Court buys into OpenAI's argument

8    that there has been no unauthorized copying or other infringement of their work, Plaintiffs and class

9    members should still be able to seek disgorgement of OpenAI's profits for the unauthorized use of their

10   books and names in creating a commercial product that generates derivative writings based on their

11   intellectual property without Plaintiffs' credit, compensation, or consent. To the extent the Court finds

12   no adequate remedy at law, the UCL's disgorgement and restitution remedies are a perfect fit for the

13   inequities and harm to money and property caused by Defendants' conduct here.

14                   **3.      Plaintiffs state a claim for negligence under California common law**

15          The elements of a claim for negligence are well-established. A plaintiff must establish that: (1)

16   the defendant had a duty, or an "obligation to conform to a certain standard of conduct for the

17   protection of others against unreasonable risks," (2) the defendant breached that duty; (3) that breach

18   proximately caused the plaintiff's injuries and, (4) injury. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir.

19   2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)). Plaintiffs have met this bar.

20          California courts consider several factors when deciding whether a duty of care exists, including

21   "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the

22   closeness of the connection between the defendant's conduct and the injury suffered, the moral blame

23   attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to

24   the defendant and the consequences to the community of imposing a duty to exercise care with

25   resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk

26   involved." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (quoting *Regents of Univ.*

27   *of Cal. v. Superior Court*, 4 Cal. 5th 607, 628 (2018) & *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968));

28   *see also Brown v. USA Taekwondo*, 11 Cal. 5th 204, 214 (2021) ("[T]he law imposes a general duty of

care on a defendant only when it is a defendant who has "created a risk" of harm to the plaintiff, including when the "defendant is responsible for making the plaintiffs position worse."). Further, these factors must be evaluated "at a relatively broad level of factual generality." *Id* at 221. (quotations omitted). Here, Plaintiffs allege that OpenAI knowingly and intentionally scraped Plaintiffs intellectual property creating a duty of care, but negligently stripped it of its CMI for inclusion of both an author's books and their names into a commercial product that stands to put those very authors out of business.

OpenAI argues that Plaintiffs' negligence claim fails because Plaintiffs elsewhere allege OpenAI's conduct was intentional. MTD at 20. It is hornbook law that the fact that Plaintiffs have successfully pleaded claims for intentional torts or other wrongs is not a basis for rejecting claims for negligence. It also ignores the fact that Plaintiffs may pursue multiple claims for redress for the same conduct. *PAE Govts Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007). OpenAI further argues Plaintiffs have not established that OpenAI owes them a duty. MTD at 20. OpenAI is wrong. Plaintiffs have established that OpenAI owed a duty of care towards Plaintiffs and putative class members when they possessed, controlled and had the authority to control Plaintiffs' Works, and failed to safeguard that information and/or intentionally and affirmatively removed such information when training the ChatGPT system. Tremblay Compl. ¶¶ 74-78; Silverman Compl. ¶¶ 75-79. Plaintiffs allege that Defendants breached their duty when training ChatGPT. *Id.*

Tort liability may also arise where the tortfeasor has a "special relationship" with the injured party. OpenAI owed Plaintiffs a duty not to steal, as described above, and breached that duty when the Plaintiffs' Works were used during the training of ChatGPT. A special relationship exists between OpenAI and Plaintiffs. Plaintiffs are the authors of books containing CMI, and Defendants took, ingested, and removed the CMI of Plaintiffs' books when training ChatGPT, without their consent. *Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10. 2006) (finding allegations that defendant, "[a]s custodians of the Representative Plaintiff's and the Class Members' personal and confidential information" "owe[d] a duty of care. . . to prevent access to such information by unauthorized third parties" sufficient). OpenAI claims that it was created the help remedy some of the world's "worst inequities" (MTD at 1), yet surreptitiously takes the labor of Plaintiffs and others, removes their CMI from their works, and inequitably profits off of their labor and

PLAINTIFFS' OPPOSITION TO OPENAI'S MOTION TO DISMISS

talent—without their consent. Plaintiffs plead facts from which it can be plausibly inferred that OpenAI was well aware and intended that the use of Plaintiffs' Works would injure the Plaintiffs, yet chose profit over equity. The harm from the conduct to the Plaintiffs was foreseeable and intentional and directly resulted from such conduct. These well pleaded facts are not a basis for a motion to dismiss.

### 4. Plaintiffs have stated a claim for unjust enrichment under California common law

"'The spirit behind the law of unjust enrichment is to apply the law "outside the box" and fill in the cracks where common civil law and statutes fail to achieve "justice."'" *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 939 (2009) (citing Roach, *How Restitution and Unjust Enrichment Can Improve Your Corporate Claim*, 26 Rev. Litig. 265, 268 (2007)). In the Ninth Circuit, Plaintiffs may pursue a claim for unjust enrichment either "as an independent cause of action or as a quasi-contract claim for restitution." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015)).

The pleading requirements are straightforward: "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners*, 828 F.3d at 1038 (citing *Lectodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)); *accord ChromaDex, Inc. v. Elysium Health, Inc.*, No. SACV1602277CJCDFMX, 2017 WL 7080237, at *4 (C.D. Cal. Nov. 28, 2017) ("Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another."); *Tufeld Corp. v. Beverly Hills Gateway, L.P.*, 86 Cal. App. 5th 12, 31-32 (2022) (same). "A benefit is broadly defined as 'any type of advantage.'" *CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. CV 12-10876-CAS (AJWx), 2013 WL 1249021, at *5 (C.D. Cal. Mar. 25, 2013). "[T]o allege a quasi-contract claim, a party must plausibly allege the absence of any applicable and enforceable contract provisions, even if in the alternative." *In re Bang Energy Drink Mktg. Litig*, No. 18-CV-05758-JST, 2020 WL 4458916, at *10 (N.D. Cal. Feb. 6, 2020).

District courts in the Ninth Circuit have routinely permitted unjust enrichment claims under California law to proceed. *See*, *e.g.*, *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 605 (N.D.

Cal. 2021) (permitting independent cause of action for unjust enrichment); *Wu v. Sunrider Corp.*, No. CV 17-4825 DSF (SSX), 2017 WL 6880087, at *4 (C.D. Cal. Oct. 10, 2017) ("As the Ninth Circuit noted, the California Supreme Court has recently clarified that unjust enrichment may be sustained as a stand-alone cause of action."); *see also In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 881-82 (N.D. Cal. 2019) (permitting claim for unjust enrichment). The Court should likewise do so here. Plaintiffs have alleged that they have invested substantial time and energy in creating their Works. Tremblay Compl. ¶ 80; Silverman Compl. ¶ 81. Plaintiffs have alleged that OpenAI took and used their valuable Works in order to train ChatGPT, which Defendants now sell for profit. Tremblay Compl. ¶¶ 81–83; Silverman Compl. ¶¶ 82–84. ChatGPT's value as a commercial product, which is currently for sake and currently profiting OpenAI, is derived from the works it is trained on. Tremblay Compl. ¶ 84; Silverman Compl. ¶ 85. Further, this was all done without Plaintiffs' consent, authorization, or other licensing. Tremblay Compl. ¶ 82; Silverman Compl. ¶ 83.

Plaintiffs also allege they have no adequate remedy at law. *See McKay v. Sazerac Co., Inc.,* No. 23-CV-00522-EMC, 2023 WL 3549515, at *8 (N.D. Cal. May 17, 2023) (permitting the plaintiff to plead legal damages and restitution in the alternative "at the early pleadings stage"). Under a theory of unjust enrichment, even if Plaintiffs have not sustained economic losses or other breach of contract damages, plaintiffs may recover the gains defendants obtained as a result of the wrongful conduct. *See Hart*, 526 F. Supp 3d at 605. (permitting unjust enrichment claim to proceed even though plaintiffs "suffered no economic loss from the disclosure of [his] information"); *Hadley v. Kellogg Sales Corp.*, 324 F. Supp. 3d 1084, 1113 (N.D. Cal. 2018) (same). These allegations are sufficient.

OpenAI claims that Plaintiffs' unjust enrichment claim fails because Plaintiffs have not conferred any benefit. MTD at 22. But Plaintiffs have. "The term 'benefit' 'denotes any form of advantage.'" *Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996) (citing Restatement (First) of Restitution § 1 cmt. b). And the taking of Plaintiffs' Works by OpenAI for its products is certainly a form of advantage. Plaintiffs' Works are the ingredients upon which ChatGPT was developed. This is an unjust enrichment to OpenAI, and an impoverishment to Plaintiffs.

## IV.   CONCLUSION

For the foregoing reasons, OpenAI's motion to dismiss should be denied.

1    Dated: September 27, 2023          By:        /s/ Joseph R. Saveri
2                                                  Joseph R. Saveri

3                                       Joseph R. Saveri (State Bar No. 130064)
                                        Cadio Zirpoli (State Bar No. 179108)
4                                       Christopher K.L. Young (State Bar No. 318371)
                                        Kathleen J. McMahon (State Bar No. 340007)
5                                       **JOSEPH SAVERI LAW FIRM, LLP**
6                                       601 California Street, Suite 1000
                                        San Francisco, California 94108
7                                       Telephone:    (415) 500-6800
                                        Facsimile:    (415) 395-9940
8                                       Email:        jsaveri@saverilawfirm.com
9                                                     czirpoli@saverilawfirm.com
                                                      cyoung@saverilawfirm.com
10                                                    kmcmahon@saverilawfirm.com
11

12                                      Matthew Butterick (State Bar No. 250953)
13                                      1920 Hillhurst Avenue, #406
                                        Los Angeles, CA 90027
14                                      Telephone:    (323) 968-2632
                                        Facsimile:    (415) 395-9940
15                                      Email:        mb@butChericklaw.com

16
                                        *Counsel for Plaintiffs and the Proposed Class*
17

18

19

20

21

22

23

24

25

26

27

28