MORRISON & FOERSTER LLP
Joseph C. Gratz (SBN 240676)
  jgratz@mofo.com
Tiffany Cheung (SBN 211497)
  tcheung@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.258.7522

Allyson R. Bennett (SBN 302090)
  abennett@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5454

LATHAM & WATKINS LLP
Andrew M. Gass (SBN 259694)
  andrew.gass@lw.com
Joseph R. Wetzel (SBN 238008)
  joseph.wetzel@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle (*pro hac vice*)
  sy.damle@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Allison L. Stillman (*pro hac vice*)
  alli.stillman@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.751.4864

*Attorneys for Defendants OpenAI, Inc.,
OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI
GP, L.L.C., OpenAI Startup Fund GP I, L.L.C.,
OpenAI Startup Fund I, L.P., and OpenAI
Startup Fund Management, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH SILVERMAN, an individual; CHRISTOPHER GOLDEN, an individual; RICHARD KADREY, an individual, <br><br> Individual and Representative Plaintiffs, <br><br> v. <br><br> OPENAI, INC., a Delaware nonprofit corporation; OPENAI, L.P., a Delaware limited partnership; OPENAI OPCO, L.L.C., a Delaware limited liability corporation; OPENAI GP, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND GP I, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND I, L.P., a Delaware limited partnership; and OPENAI STARTUP FUND MANAGEMENT, LLC, a Delaware limited liability company, <br><br> Defendants. | CASE NO. 3:23-cv-03416-AMO <br><br> **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:      December 7, 2023 <br> Time:      2:00 pm <br> Place:     Courtroom 10 - 19th Floor <br> Before:    Hon. Araceli Martínez-Olguín |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 2

      A.    Plaintiffs' Vicarious Infringement Claim Fails........................................ 2

            1.    Plaintiffs Do Not Allege Direct Infringement by a Third Party ............... 2

            2.    Plaintiffs Do Not Allege Right and Ability to Supervise ......................... 6

            3.    Plaintiffs Do Not Allege Direct Financial Benefit.................................... 7

      B.    Plaintiffs' DMCA Claims Fail ................................................................. 8

            1.    Section 1202(b)(1) .................................................................................. 8

            2.    Section 1202(b)(3) ................................................................................ 10

      C.    Plaintiffs' UCL Claim Fails .................................................................... 11

      D.    Plaintiffs' Negligence Claim Fails.......................................................... 13

      E.    Plaintiffs' Unjust Enrichment Claim Fails.............................................. 13

      F.    The Negligence and Unjust Enrichment Claims Are Preempted....................... 14

III.  CONCLUSION.................................................................................................. 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) ............................................................... 14

*Apple Inc. v. Allan & Assocs. Ltd.*,
  445 F. Supp. 3d 42 (N.D. Cal. 2020) ................................................... 12

*Bittel Technology, Inc. v. Bittel USA, Inc.*,
  No. 10-cv-00719, 2010 WL 3221864 (N.D. Cal. Aug. 13, 2010) .......................................... 13

*Bravado Int'l Grp. Merchandising Servs., Inc. v. Zhao*,
  No. 13-cv-01032, 2014 WL 12579810 (C.D. Cal. June 20, 2014) ............................................ 5

*Bruton v. Gerber Prods. Co.*,
  703 F. App'x 468 (9th Cir. 2017) ......................................................... 14

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*,
  329 F.3d 923 (7th Cir. 2003) ................................................................. 4

*Cellular Accessories for Less, Inc. v. Trinitas LLC*,
  65 F. Supp. 3d 909 (C.D. Cal. 2014) .................................................... 5

*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal.4th 163 (1999) ........................................................................ 11

*China Cent. Television v. Create New Tech. (HK) Ltd.*,
  No. 15-cv-01869, 2015 WL 12732432 (C.D. Cal. Dec. 7, 2015) ......................................... 6, 8

*ChromaDex, Inc. v. Elysium Health, Inc.*,
  No. 16-cv-02277, 2017 WL 7080237 (C.D. Cal. Nov. 28, 2017) ......................................... 14

*CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*,
  No. 12-cv-10876, 2013 WL 1249021 (C.D. Cal. Mar. 25, 2013) ......................................... 14

*Davis v. RiverSource Life Ins. Co.*,
  240 F. Supp. 3d 1011 (N.D. Cal. 2017) ................................................ 12

*Doe 1 v. Github, Inc.*,
  No. 22-cv-06823, 2023 WL 3449131 (N.D. Cal. May 11, 2023) ............................... 11, 12, 15

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
  No. 22-cv-01463, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ........................................ 11

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ............................................................... 8

*ESG Cap. Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ............................................................. 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ........................................................................... 6

*Free Speech Sys. LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ......................................................... 8

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   700 F. App'x 674 (9th Cir. 2017) ................................................................ 11

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   No. 13-cv-00496, 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ...................... 11

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   No. 13-cv-00496, 2015 WL 263556 (D. Haw. Jan. 21, 2015) ....................... 11

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
   958 F.2d 896 (9th Cir. 1992) .................................................................. 14, 15

*Hadley v. Kellogg Sales Corp.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ........................................................ 14

*Hart v. TWC Prod. and Tech. LLC*,
   526 F. Supp. 3d 592 (N.D. Cal. 2021) .......................................................... 14

*Hernandez v. Lopez*,
   180 Cal. App. 4th 932 (2009) ....................................................................... 13

*ICONICS, Inc. v. Massaro*,
   192 F. Supp. 3d 254 (D. Mass. 2016) ........................................................... 10

*In re Bang Energy Drink Marketing Litig.*,
   No. 18-cv-05758, 2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ..................... 14

*In re General Motors LLC CP4 Fuel Pump Litig.*,
   393 F. Supp. 3d 871 (N.D. Cal. 2019) .......................................................... 14

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ........................................................................ 9

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*,
   No. 12-cv-2650, 2015 WL 12712311 (C.D. Cal. Dec. 16, 2015) ..................... 5

*Izmo, Inc. v. Roaster, Inc.*,
   No. 18-cv-06092, 2019 WL 13210561 (N.D. Cal. Mar. 26, 2019) ................ 10

*KaZee, Inc. v. Callender*,
   No. 19-cv-31, 2020 WL 994832 (E.D. Tex. Mar. 2, 2020) ............................. 5

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................... 12

*Kilina Am., Inc. v. Bonded Apparel, Inc.*,
   No. 19-cv-3027, 2019 WL 8065854 (C.D. Cal. Nov. 19, 2019) ...................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

*Laws v. Sony Music Ent., Inc.*,
  448 F.3d 1134 (9th Cir. 2006) ................................................................................ 15

*Liberty Media Holdings, LLC v. Does 1-62*,
  No. 11-cv-575, 2011 WL 1869923 (S.D. Cal. May 12, 2011) ................................. 13

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ................................................................................... 3

*Luvdarts, LLC v. AT&T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ................................................................................... 7

*Mango v. Buzzfeed, Inc.*,
  970 F.3d 167 (2d Cir. 2020) ................................................................................. 9, 10

*Micro Star v. Formgen Inc.*,
  154 F.3d 1107 (9th Cir. 1998) ................................................................................... 4

*New Sensations, Inc. v. Does*,
  No. 12-cv-3800, 2012 WL 12898400 (N.D. Cal. Nov. 29, 2012) ........................... 13

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................................... 7

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ..................................................................................... 8

*Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ..................................................................................... 7

*Pourtemour v. Simpson*,
  No. 07-cv-7308, 2008 WL 11419054 (C.D. Cal. Mar. 4, 2008) ............................. 15

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
  668 F.3d 1148 (9th Cir. 2012) ................................................................................ 4, 6

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ........................................................................... 4, 5, 6

*Ross-Nash v. Almond*,
  No. 19-cv-00957, 2020 WL 6947691 (D. Nev. Oct. 28, 2020) ................................ 4

*Schneider v. Cal. Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) ................................................................................... 7

*Silas v. Home Box Office, Inc.*,
  201 F. Supp. 3d 1158 (C.D. Cal. 2016) ..................................................................... 3

*Silvercrest Realty, Inc. v. Great Am. E&C Ins. Co.*,
  No. 11-cv-01197, 2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) ........................... 12

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) (en banc) ................................................................... 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..................................................................................... 12

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ................................................................................................... 3

*Tanksley v. Daniels*,
    902 F.3d 165 (3d Cir. 2018) ....................................................................................... 5

*Thomson Reuters Enters. Ctr. GmbH v. Ross Intelligence Inc.*,
    No. 20-cv-00613, 2023 WL 6210901 (D. Del. Sept. 25, 2023).................................. 15

*Troyk v. Farmers Grp., Inc.*,
    171 Cal. App. 4th 1305 (2009) ................................................................................. 12

*Tufeld Corp. v. Beverly Hills Gateway, L.P.*,
    86 Cal. App. 5th 12 (2022) ....................................................................................... 14

*Tyler v. Travelers Com. Ins. Co.*,
    499 F. Supp. 3d 693 (N.D. Cal. 2020) ................................................................. 8, 10

*Venegas-Hernandez v. Asociacion De Compositores, Editores De Musica Latinoamerica (ACEMLA)*,
    424 F.3d 50 (1st Cir. 2005) ....................................................................................... 15

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ................................................................................. 6, 7

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
    43 F.4th 1313 (11th Cir. 2022) ................................................................................... 9

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*,
    354 F.3d 112 (2d Cir. 2003).................................................................................... 3, 4

*Witriol v. LexisNexis Grp.*,
    No. 05-cv-02392, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) .......................... 13

*Wu v. Sunrider Corp.*,
    No. 17-cv-4825, 2017 WL 6880087 (C.D. Cal. Oct. 10, 2017) ............................ 14

*YellowCake, Inc. v. DashGo, Inc.*,
    No. 21-cv-0803, 2022 WL 172934 (E.D. Cal. Jan. 19, 2022) ................................. 5

## STATUTES

17 U.S.C. § 106 ......................................................................................................... 14

17 U.S.C. § 1202(b) ..................................................................................... 8, 9, 10, 11

17 U.S.C. § 301(a) ..................................................................................................... 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................ 12

**OTHER AUTHORITIES**

2 Nimmer on Copyright § 8.09 ................................................................................. 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

## I.    INTRODUCTION

The issue at the heart of this litigation is whether training artificial intelligence to understand human knowledge violates copyright law.  It is on that question that the parties fundamentally disagree, and on which the future of artificial intelligence may turn.  The purpose of this Motion is to remove from the litigation an assortment of ancillary legal claims, none of which fits the facts alleged, and some of which might fundamentally distort the analysis of the core question at issue.

The leading example is Plaintiffs' claim of vicarious copyright infringement.  In order for Defendants to be *vicariously* liable for copyright infringement, there must of course be an act of copyright infringement by someone else.  The third-party infringement that Plaintiffs point to, for purposes of this claim, is the creation of outputs by ChatGPT users.  Every such output, Plaintiffs contend, is an infringing "derivative work," irrespective of whether the particular output contains any copyrightable expression from a work used to train the model.  Under Plaintiffs' theory, when ChatGPT answers the question, "Who is the greatest basketball player of all time?" with "Michael Jordan," that answer somehow infringes both Sarah Silverman's and Paul Tremblay's books.  That legal theory is incorrect.  Irrespective of how the outputs came to be, the outputs themselves are not copyright infringements unless they contain enough protected expression from an original work to be "substantially similar" in the copyright law sense of that phrase.

This is no minor quibble.  It matters because a ruling at the outset of the litigation that *every single output of ChatGPT* is a *prima facie* copyright infringement would send the parties and the Court down the wrong path on a range of potentially critical issues—including among others the propriety of class certification and the sound application of the fair use doctrine.  A case about a technology whose every last output is infringing would look very different, at virtually every phase, from the case resulting from the facts Plaintiffs have alleged here, on a proper application of the law.  It is essential to the proper trajectory of the litigation for the Court to reject at square one Plaintiffs' erroneous theory.

The Section 1202 claims are equally flawed.  For example, the first part of that claim is based on Plaintiffs' one-sentence conclusory assertion that OpenAI scrubbed copyright

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

management information ("CMI") from its training data.  But Plaintiffs allege no facts to support that suggestion and their own exhibits contradict it.  Absent a coherent and plausible factual and legal underpinning, the Section 1202 claims have no place in this litigation and their inclusion will only skew the issues in dispute, needlessly complicating discovery and, later, summary judgment.

Plaintiffs' state-law claims are similarly flawed and will have the same confounding effect. Plaintiffs, for example, insist that OpenAI's conduct constitutes "negligence" and "unjust enrichment."  But these are not "catch-all" claims to append to every case.  They are well-established doctrines, with prescribed elements that are not remotely satisfied by the facts alleged in the Complaints.  And the relevant factual allegations are duplicative of the allegations supporting the copyright claims, which means the state claims are preempted by federal law.

This case presents important questions regarding the intersection of copyright law and the rapidly growing field of artificial intelligence.  But Counts II through VI of the Complaints fail on their face to state a claim for relief.  The Court should dismiss them with prejudice.

## II.    ARGUMENT

### A.    Plaintiffs' Vicarious Infringement Claim Fails

A vicarious infringement claim requires (1) an act of direct infringement by a third party for which the defendant could be liable; (2) the "right and ability to supervise" that infringement; and (3) a "direct financial interest" in that infringement.  MTD at 8.  Count II fails each element.

#### 1.    Plaintiffs Do Not Allege Direct Infringement by a Third Party

Count II is based on the contention that "every output of [ChatGPT] is an infringing derivative work" because it is "based on expressive information extracted from Plaintiffs' works." Tremblay Compl. ¶¶ 58–61 (emphasis added); Silverman Compl. ¶¶ 59–62; Opp. at 9.  That contention is incorrect as a matter of law, and Count II should be dismissed on this basis alone.

Plaintiffs' arguments on this issue reflect a misunderstanding of the basic framework of copyright litigation.  As Plaintiffs appear to agree, their Complaints allege that three separate infringing acts have occurred: (a) the creation of copies during the training process; (b) the creation of the models themselves; and (c) the generation of ChatGPT outputs, which (according to Plaintiffs) are infringing derivatives of their books.  Opp. at 7–8.  And Plaintiffs agree that only

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

the third alleged infringement—the creation of outputs—is the subject of the vicarious liability claim, because that is the only infringement allegedly committed by third parties (*i.e.*, users). *Id.* at 8. In Plaintiffs' view, their allegation that OpenAI "direct[ly] cop[ied]" the books during training (*i.e.*, the conduct in (a) above) means that every ChatGPT output (the conduct in (c) above) is an infringing derivative simply because it "originated from direct copying." *Id.* at 6–7, 9.

This is not how courts evaluate copyright claims. Suppose a film student uses a VCR to record a television broadcast of *Citizen Kane* to study the film's cinematography later. After class, the student watches the recording, taking diligent notes, and then sets out to create their own film as a tribute to Orson Welles. In litigation, the studio that owns the rights to *Citizen Kane* might allege that the student's creation of an identical copy of the film using their VCR constituted an infringement of copyright's reproduction right. *But see Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449, 454–55 (1984) (recording content "for private home use" is fair use). But the fact that the student "directly copied" the broadcast using their VCR does not bear on whether the film subsequently created is an unauthorized "derivative work." *Contra* Opp. at 8–10. That depends entirely on whether the student's film is "substantially similar" to *Citizen Kane*. *See Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984). If the similarities consist of unprotectable elements—like ideas, facts, styles, themes, or cinematography techniques—the student's film is not a *prima facie* infringing derivative work. *See* MTD at 6–7.

So too here. Plaintiffs' allegation that OpenAI "directly copied" their books to train its models serves to plead a claim based on that alleged copying—*i.e.*, the first of Plaintiffs' three distinct copyright claims. Opp. at 7–8. But nothing more. Whether OpenAI "directly copied" Plaintiffs' books during the training process has no bearing on whether any given ChatGPT output is an infringing derivative of those books.[1] Instead, whether a ChatGPT output infringes the derivative-work right depends entirely on whether that output contains "enough of [the books']

---

[1] *See, e.g.*, *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1166, 1183 (C.D. Cal. 2016) (dismissing copyright claim for lack of substantial similarity even though defendant was alleged to have copied plaintiffs' television treatment before abandoning plans to develop it); *see also Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*, 354 F.3d 112, 114–17 (2d Cir. 2003) (upholding dismissal of derivative-work claim, notwithstanding finding that the defendant had created its work by "actually copying" the plaintiff's work, for lack of substantial similarity).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

expression . . . to render the [output] substantially similar" to those books.  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018) (affirming grant of motion to dismiss for lack of substantial similarity); *see also Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc) ("[O]nly substantial similarity in protectable expression may constitute actionable copying that results in infringement liability.").[2]

The cases Plaintiffs cite do not suggest otherwise.  Instead, they stand for the unremarkable proposition that, when alleged liability arises from conduct that is limited to a defendant's identical copy of the entirety of a plaintiff's work, a court need not grapple with an analysis of how similar the two works are or are not in order to conclude that there has been a *prima facie* act of infringement.  *See, e.g.*, *Ross-Nash v. Almond*, No. 19-cv-00957, 2020 WL 6947691, at *1–3 (D. Nev. Oct. 28, 2020) (skipping substantial similarity because defendant "admitted to photocopying" the entirety of plaintiff's book "and selling the photocopy"); *see also Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1152, 1154 (9th Cir. 2012) (substantial similarity analysis unnecessary where "uncontradicted" evidence established that defendant played recordings of plaintiff's songs "on [its] venue's CD player" without a license).  But with respect to the ChatGPT outputs that are the basis of Plaintiffs' vicarious liability claim, the parties agree that those outputs are *not* verbatim copies of Plaintiffs' copyrighted books.  Tremblay Compl. ¶ 41; Silverman Compl. ¶ 42.  That in turn means that the viability of the claim depends precisely on how close the outputs are or are not to the original works.  None of the cases cited by Plaintiffs suggests that pleading an antecedent act of "direct copying" means that all subsequently created works—like our student's film or ChatGPT's outputs—are necessarily infringing derivatives notwithstanding

---

[2] *See also Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 930 (7th Cir. 2003) ("[T]hat [a new work] had been 'derived' in a genetic sense from a[n] original would not make it infringing."); *Well-Made Toy*, 354 F.3d at 117 (if "two works [are not] substantially similar, then the secondary work is not a derivative work" "even when [it is] 'based upon'" the original); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110–11 (9th Cir. 1998) (derivative work "must substantially incorporate protected material from the preexisting work," otherwise the derivative-work right would encompass "[e]very book in literature," each of which "must necessarily borrow[] and use much which was well known and used before" (citations omitted)); 2 Nimmer on Copyright § 8.09 ("Countless works are . . . 'based on' copyrighted works and, in that lay sense, constitute 'derivative works.'  But unless the product is substantially similar . . . it remains nonactionable.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

1   their lack of similarity to the originals.[3]

2          Plaintiffs incorrectly contend that in a copyright case, "evidence of direct copying" can

3   substitute for a showing of "access and substantial similarity."  Opp. at 7.  But they are conflating

4   the proper analysis of two distinct questions that sometimes come up in copyright cases:

5   (a) whether, as a factual matter, the defendant "created his [work] independently, without

6   knowledge of or exposure to" the original (*i.e.*, whether "actual copying" took place); and

7   (b) whether, if actual copying occurred, that copying is the kind of use that copyright law

8   condemns (*i.e.*, whether there was "unlawful appropriation").  *Rentmeester*, 883 F.3d at 1117–18;

9   *see also Tanksley v. Daniels*, 902 F.3d 165, 173–74 (3d Cir. 2018).  The rule that Plaintiffs are

10  referring to, but misconstruing, goes to question (a); but the argument in this Motion goes to

11  question (b).  More precisely, the rule in the cases Plaintiffs are invoking says that if the defendant

12  contests "actual copying" by insisting that the challenged work was created independently, the

13  plaintiff can respond by either (1) presenting "direct evidence of copying" or (2) proving it

14  "circumstantially by showing that the defendant had *access* to the plaintiff's work" and identifying

15  features common to both works that "one would not expect to arise" by mere coincidence.

16  *Rentmeester*, 883 F.3d at 1117.  In other words, under copyright law, a plaintiff can use the striking

17  similarity between two works to argue that "actual copying" in fact took place, notwithstanding

18  the defendant's position that the allegedly infringing work was independently created.  But

19  critically, that evidence standing alone is "insufficient to support an infringement claim,"

20  *Tanksley*, 902 F.3d at 174, because not all "actual copying" qualifies as "unlawful appropriation,"

21  *Rentmeester*, 883 F.3d at 1124.

22

23  [3] *Cf. ITC Textile Ltd. v. Wal-Mart Stores Inc.*, No. 12-cv-2650, 2015 WL 12712311, at *4–5 (C.D.
    Cal. Dec. 16, 2015) (defendant "admitted" that it had "inadvertent[ly]" "used [plaintiff's] same
24  designs" beyond scope of license agreement); *Cellular Accessories for Less, Inc. v. Trinitas LLC*,
    65 F. Supp. 3d 909, 915 (C.D. Cal. 2014) (defendants "[did] not dispute . . . that their website is
25  substantially similar to Plaintiff's website"); *Bravado Int'l Grp. Merchandising Servs., Inc. v.
    Zhao*, No. 13-cv-01032, 2014 WL 12579810, at *7 (C.D. Cal. June 20, 2014) (claim based entirely
26  on allegation that defendants "distributed copies of the copyrighted images themselves"); *see also
    YellowCake, Inc. v. DashGo, Inc.*, No. 21-cv-0803, 2022 WL 172934, at *2–3, *7 (E.D. Cal. Jan.
27  19, 2022) (defendant had "engaged in a number of unauthorized exploitations" of sound recordings
    after its rights "to exploit" those works were "terminated"); *KaZee, Inc. v. Callender*, No. 19-cv-
28  31, 2020 WL 994832, at *7 (E.D. Tex. Mar. 2, 2020) (substantial similarity analysis unnecessary
    because "[i]t is beyond dispute" that the defendant made verbatim copies of plaintiff's works).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

1    For that reason, the doctrine Plaintiffs allude to in their brief has nothing to do with the

2   circumstance or question presented here.  The point of this Motion, in *Rentmeester*'s terms, is that

3   even assuming that "actual copying" took place at the training stage, Plaintiffs have not adequately

4   pled that "unlawful appropriation" occurred at the output stage.  *Id.* at 1118, 1121 (affirming

5   dismissal, even though plaintiff "plausibly alleged" actual copying, because the works "as a matter

6   of law [are] not substantially similar").  Notwithstanding Plaintiffs' resistance, the "unlawful

7   appropriation" element of an infringement claim always requires that the challenged work contains

8   "enough of the plaintiff's expression . . . to render the two works 'substantially similar.'"  *Id.* at

9   1117.  Because nothing in the Complaints suggest that *every* ChatGPT output shares protectable

10  similarities with Plaintiffs' books—a point Plaintiffs notably do not contest, Opp. at 7–8—the

11  Complaints fail to allege that those outputs constitute acts of direct copyright infringement for

12  which OpenAI could be held vicariously liable.

13                      2.    Plaintiffs Do Not Allege Right and Ability to Supervise

14   Under Ninth Circuit precedent, vicarious liability arises only where the defendant has the

15  "technical ability to screen out or identify" infringements.  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d

16  723, 746 (9th Cir. 2019).  A plaintiff might plead such an ability by alleging (for example) that the

17  defendant "controlled and patrolled" its premises and could therefore readily identify and stop

18  infringing activity by third parties.  *See, e.g., Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259,

19  262–63 (9th Cir. 1996).  But a defendant who lacks that practical ability cannot be held vicariously

20  liable.  *Zillow*, 918 F.3d at 746 (affirming rejection of vicarious liability claim because "ferreting

21  out claimed infringement" would have required "hunting for a needle in a haystack").[4]

22   As OpenAI explained in its opening brief, the Complaints make no attempt to allege how

23  OpenAI could supervise the ChatGPT outputs that (according to Plaintiffs) constitute the direct

24  infringements on which Count II is based—responses to a potentially infinite universe of user

---

[4] Plaintiffs' citation to *Range Road* is inapposite for this reason.  668 F.3d at 1155 (allegation that
defendants "exercised . . . managerial authority" over venue that performed copyrighted material
without authorization was sufficient to allege vicarious liability).  So too for *China Central
Television v. Create New Technology (HK) Limited*, No. 15-cv-01869, 2015 WL 12732432 (C.D.
Cal. Dec. 7, 2015), where the claim was based on defendants' refusal to take specific "steps *within
their control* to stop the infringement."  *Id.* at *5, *11 (emphasis added).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

prompts.  The only allegation is a single sentence: "OpenAI has the right and ability to control the output of the OpenAI Language Models."  Tremblay Compl. ¶ 60; Silverman Compl. ¶ 61.  This "lacks the requisite detail to sustain a claim."  *Kilina Am., Inc. v. Bonded Apparel, Inc.*, No. 19-cv-3027, 2019 WL 8065854, at *2 (C.D. Cal. Nov. 19, 2019) (dismissing vicarious liability claim).

In response, Plaintiffs urge the Court to "infer[]" that OpenAI has the right and ability to supervise third-party infringements based on the fact that "OpenAI created and released ChatGPT and its underlying LLMs," and suggest two measures OpenAI might have taken to stop users' infringement.  Opp. at 11.[5]  First, Plaintiffs suggest that OpenAI could filter certain material from its training data.  *Id.*  But the "right and ability to supervise" means the ability to "cause a *third party* to stop its directly infringing activities," *e.g.*, by identifying and blocking third-party infringements.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007) (emphasis added).  The Ninth Circuit has repeatedly held that a plaintiff cannot satisfy that requirement by suggesting changes to a defendant's product that might make third-party infringement *less likely*.  *Id.* (suggestion that defendant could "avoid indexing [certain] websites" insufficient).[6]  Second, Plaintiffs suggest that OpenAI could "just turn[] the models off."  Opp. at 11.  But *any* defendant accused of vicarious liability has the ability to remove its products or services from the market.  That ability cannot, standing alone, suffice to state a claim for relief.  *Cf. Zillow*, 918 F.3d at 746; *Visa*, 494 F.3d at 806; *Amazon.com*, 508 F.3d at 1175.

### 3.   Plaintiffs Do Not Allege Direct Financial Benefit

As OpenAI explained in its Motion, the Complaints' sole allegation as to the "direct financial benefit" requirement of the vicarious infringement claim is a single sentence stating that OpenAI "benefited financially."  MTD at 11.  In response, Plaintiffs point out that they also alleged that OpenAI "profits richly," that ChatGPT is "sold by OpenAI . . . for $20 per month," and that

---

[5] Neither of these measures actually appear in the Complaints, which is an independent reason for the Court to disregard them.  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (court "may not look beyond the complaint to a plaintiff's moving papers").

[6] *See also Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007) (a website's "ability to control its own index, search results, and webpages does not give [it] the right to control the infringing acts of third parties even though that ability would allow [it] to affect those infringing acts to some degree"); *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1071–72 (9th Cir. 2013) (allegation that defendants could "change their behavior" to avoid infringement "cannot substitute for an allegation of a capacity to supervise"); *Zillow*, 918 F.3d at 746 (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

the ChatGPT "API is billed on the basis of usage."  Opp. at 11 & n.5 (citations omitted).

None of these allegations establishes the "direct financial benefit" specifically from third-party copyright infringement required to plead vicarious infringement.  That a defendant offers a service in exchange for a "fee" or "periodic payments" does not suffice, absent allegations that users were motivated to make those payments by the prospect of using the service to infringe the plaintiff's copyrights.  *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 674 (9th Cir. 2017) (affirming dismissal where "there was no evidence indicating that anyone subscribed . . . because of infringing [] material [owned by the plaintiff]").  There are no such allegations here.  *Compare China Cent.*, 2015 WL 12732432, at *4 (service promoted as "the favorite of those who love to watch [plaintiff's content]").

### B.     Plaintiffs' DMCA Claims Fail

OpenAI's Motion raised multiple independent grounds for dismissal of Plaintiffs' Section 1202(b) claims.  MTD at 11–18.  Plaintiffs "fail[] to address" most of these arguments, and thereby "concede[]" them.  *Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020).

#### 1.     Section 1202(b)(1)

Plaintiffs completely ignore the first basis for dismissal of the Section 1202(b)(1) claim: that the Complaints lack any specific allegations to suggest that OpenAI somehow deleted their "names" and the books' publication years from the copies OpenAI allegedly made when compiling its training dataset.  MTD at 14.[7]  To be clear: the *only* allegation about this supposed deletion is a single sentence asserting (without any factual basis) that OpenAI's "training process does not preserve any CMI" "by design."  Tremblay Compl. ¶ 64, Silverman Compl. ¶ 65.

---

[7] Plaintiffs claim they "specifically allege[d] that their works contained" CMI consisting of "the ISBN number or copyright number" and "terms of conditions and use."  Opp. at 13.  But the paragraphs they cite allege no such thing.  Paragraph 25 of the *Tremblay* Complaint, for example, merely alleges that "[a]uthors, including Plaintiffs, publish books with certain [CMI]," listing "the ISBN number or copyright number" and "terms and conditions of use" as illustrative examples. Tremblay Compl. ¶ 25; *see also* Silverman Compl. ¶ 26.  This falls short of the operative pleading standard, which requires identification of the CMI contained specifically in the works-in-suit, not references to the types of CMI that authors of such works tend to use.  *See Free Speech Sys. LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (allegation that "certain . . . [CMI]" was removed, absent facts regarding "what the removed or altered CMI was," were insufficient to state Section 1202(b) claim).  The only forms of CMI specifically alleged in the Complaints are Plaintiffs' names and publication years.  MTD at 13–14.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

1     Plaintiffs do not address the inconsistency between this conclusory statement and their own

2  pleadings.  MTD at 14–15.  Plaintiffs ignore that the ChatGPT outputs they attached to their

3  Complaints include the very CMI they allege OpenAI "removed"—which renders implausible

4  their allegations that CMI was deleted during training.  MTD at 15.  Nor do Plaintiffs acknowledge

5  that their Complaints allege OpenAI copied the books at issue *in their entirety*—*i.e.*, including the

6  CMI that (Plaintiffs concede) was "located in each book."  Opp. at 16 n.8; MTD at 14.  Absent

7  explanation of how this CMI can simultaneously have been scrubbed from OpenAI's training data

8  and also feature prominently in ChatGPT outputs, Plaintiffs' assertion that "the training process

9  does not preserve any CMI" "by design" lacks factual basis, is inherently contradictory, and cannot

10 support a claim.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("conclusory"

11 allegations, "unwarranted deductions of fact, or unreasonable inferences" insufficient).

12     OpenAI's second independent basis for dismissal of the Section 1202(b)(1) claim is that,

13 even if OpenAI somehow deleted Plaintiffs' names and publication years from the copies of their

14 books it allegedly made for its training dataset, OpenAI could not have had "reasonable grounds

15 to know" that removal would "induce, enable, facilitate, or conceal" copyright infringement

16 because that dataset is not publicly accessible.  MTD at 16; 17 U.S.C. § 1202(b*); compare Mango

17 v. Buzzfeed, Inc.*, 970 F.3d 167, 172–73 (2d Cir. 2020) (scienter requirement satisfied because

18 journalist who used photograph in "published [] news article" had "reasonable grounds to know[]"

19 that removal of "gutter credit" would "conceal" the fact that he had not licensed the photograph).

20     Plaintiffs' only response is to point to OpenAI's "failure to reveal which internet book

21 corpora ChatGPT is trained on," which (they claim) makes it difficult for users to "determine

22 whether any output is infringing or not."  Opp. at 14–15.  But whether an "output is infringing"

23 depends on the degree of similarity, not on technical details like the composition of an underlying

24 dataset.  *See supra* 3–6.  In any case, nothing in the DMCA requires OpenAI to reveal the

25 components of its training data to the public.  To plead Section 1202(b)(1)'s scienter requirement,

26 Plaintiffs must provide some plausible basis for how the *specific violation alleged*—here, the

27 alleged deletion of their names and publication years from an internal dataset—could conceal an

28 act of infringement.  *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1325 (11th

1   Cir. 2022) (requiring "some identifiable connection" between the violation and an infringement).[8]

2   Referencing some *other* alleged act or omission is beside the point. *Contra* Opp. at 14–15.

3        2. <u>Section 1202(b)(3)</u>

4     OpenAI also presented two independent grounds for dismissal of the Section 1202(b)(3)

5   claim. MTD at 17–18. First, OpenAI pointed out that Section 1202(b)(3), by its terms, applies

6   only in the event of a "distribut[ion]" of a plaintiff's "work[]" or "copies of [it]," 17 U.S.C.

7   § 1202(b)(3), and does not prohibit the distribution of *derivative works* without the CMI that

8   accompanied the originals. MTD at 17 (citing cases). As such, even accepting Plaintiffs'

9   contention that all ChatGPT outputs are derivative works, the distribution of those outputs cannot

10  violate Section 1202(b)(3). Plaintiffs ignore this argument in their opposition, and thereby concede

11  it is a sufficient basis to dismiss the Section 1202(b)(3) claim. *Travelers*, 499 F. Supp. 3d at 701.

12    OpenAI's second independent basis for dismissal of the Section 1202(b)(3) claim is that,

13  even assuming that the ChatGPT outputs that OpenAI "distribut[ed]" constituted Plaintiffs'

14  "works" or "copies of [them]," Plaintiffs failed to allege that any CMI was "removed" from those

15  copies. 17 U.S.C. § 1202(b)(3); MTD at 17–18. As OpenAI explained, there is a legally

16  significant difference between (1) redacting or cropping out a plaintiff's name from an otherwise

17  unaltered book or image, *see, e.g., Mango*, 970 F.3d at 172; *ICONICS, Inc. v. Massaro*, 192 F.

18  Supp. 3d 254, 267, 272–73 (D. Mass. 2016) (defendants "admit[ted]" to making verbatim copies

19  of plaintiff's code and "delet[ing]" the "copyright header"); and (2) creating an entirely new work

20  that does not include the original CMI, MTD at 17–18. OpenAI cited numerous cases holding that

21  the latter circumstance does not violate Section 1202(b), even if the defendant's work is similar to

22  the original, because *omission* of CMI from a new and different creation is not the same as an

23  affirmative act of "remov[al]" of CMI from an existing one. *Id.*

24    In response, Plaintiffs misapprehend the argument as demanding "identicality." Opp. at

25

---

26  [8] Plaintiffs' argue that "[n]owhere in the statute or in this Circuit's caselaw does scienter require that the public need have knowledge that CMI was removed." Opp. at 16. But CMI removal that

27  occurs behind closed doors cannot "induce, enable, facilitate, or conceal [] infringement." 17 U.S.C. § 1202(b). As this Court explained in *Izmo, Inc. v. Roaster, Inc.*, "the point of CMI is to

28  inform the public that something is copyrighted and to prevent infringement." No. 18-cv-06092, 2019 WL 13210561, at *3 (N.D. Cal. Mar. 26, 2019) (citation omitted).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

1    16.  This misses the point: what matters is whether the Complaints allege that CMI had been

2    "removed" from the "copies" of Plaintiffs' "works" that OpenAI allegedly "distribute[d]."

3    17 U.S.C. § 1202(b)(3); MTD at 17.  Allegations that the defendant "distribut[ed]" a new, different

4    work—here, ChatGPT outputs—that omitted Plaintiffs' CMI do not as a matter of law support a

5    claim that CMI has been "removed" from those outputs, as Plaintiffs' own cited cases make clear.[9]

6         ### C.    Plaintiffs' UCL Claim Fails

7              "Count 4" of the Complaints, for violation of California's Unfair Competition Law

8    ("UCL"), consists of four paragraphs, each of which focuses exclusively on OpenAI's alleged

9    "unlawful business practices."  Tremblay Compl.  ¶¶ 69–72, Silverman Compl. ¶¶ 70–73.  For this

10   reason, OpenAI observed in its Motion that Count 4 proceeds solely under the UCL's "unlawful"

11   prong.  MTD at 19.  And because the Complaints state that "[t]he unlawful business practices . . .

12   violate [the UCL] . . . because that conduct . . . violat[es] the DMCA," OpenAI observed that

13   Plaintiffs' Section 1202(b) claim is the sole predicate for their UCL claim.  *Id.*

14             In response, and contrary to the language of the Complaints, Plaintiffs insist that they also

15   alleged claims under the UCL's "unfair" and "fraudulent" prongs.  Opp. at 19–20.  But a claim

16   under the UCL's "unfair" prong requires a plaintiff to allege "conduct that threatens an incipient

17   violation of an antitrust law."  *Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th

18   163, 187 (1999).  There are no such allegations here.  And the words "fraud" or "fraudulent" appear

19   nowhere in the pleadings, nor do Plaintiffs make any attempt to satisfy Rule 9(b)'s requirement to

20

21   [9] *See Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-cv-00496, 2014 WL 5798282, at *5 (D.
     Haw. Nov. 7, 2014) ("redraw[ing]" plans without original CMI "would not involve any removal"
22   of CMI); *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-cv-00496, 2015 WL 263556, at *4
     (D. Haw. Jan. 21, 2015) (denying motion for reconsideration, holding that creation of "derivative
23   work" "based . . . on the [plaintiff's] work" does not constitute "remov[ing] the [CMI] from
     [plaintiff's] original"); *Frost-Tsuji Architects v. Highway Inn, Inc.*, 700 F. App'x 674, 675 (9th
24   Cir. 2017) (affirming both orders and endorsing district court's reasoning); *Dolls Kill, Inc. v.
     Zootop Bus. Co.*, No. 22-cv-01463, 2022 WL 16961477, at *3–4 (C.D. Cal. Aug. 25, 2022)
25   (allegation that defendant created "knockoff products" did not allege "that Defendants removed
     . . . anything [from] Plaintiffs' original works;" noting that differences between the products
26   suggested that defendants created new work rather than simply removing CMI from the original).
     Plaintiffs also assert that the Court in *Doe 1 v. Github, Inc.*, "sustained" a DMCA claim on the
27   same facts.  Opp. at 17 n.9; No. 22-cv-06823, 2023 WL 3449131 (N.D. Cal. May 11, 2023).  But
     *Github* addressed a claim based on materially different facts, *see id.* at *2, and the Court's order
28   did not address any of the issues or cases discussed above, *see id.* at *11–12.  This is why Plaintiffs'
     opposition relies primarily on the parties' briefs, not the Court's decision.  Opp. at 17 n.9.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

plead fraud "with particularity." Fed. R. Civ. P. 9(b); *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) (plaintiff may not amend complaint "by the briefs in opposition to a motion to dismiss"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127–28 (9th Cir. 2009) (affirming dismissal of UCL claim for failure to plead fraud with particularity).

As to the "unlawful" claim that Plaintiffs *did* plead, OpenAI advanced two independent bases for dismissal beyond the threshold matter of whether the predicate DMCA violation is adequately stated. First, OpenAI argued that Plaintiffs failed to allege some economic injury that flows directly from the predicate violation—here, the alleged removal of Plaintiffs' CMI from an internal dataset and the suggestion that ChatGPT's outputs do not include that CMI. MTD at 19 (citing cases). In response, Plaintiffs cite a litany of perceived injuries, each of which stems not from their DMCA claims but from their copyright claims. Opp. at 21 (referring to Plaintiffs' "stolen writings," OpenAI's "ill-gotten profit," and "deprivation of [] intellectual property"). Other than general remarks about the "purpose of the DMCA" and the importance of "intellectual property rights," *id.*, Plaintiffs do not explain how these injuries are "the result of" the alleged omission or removal of CMI, as the UCL requires for a claim predicated on a DMCA violation, *Davis v. RiverSource Life Ins. Co.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017). In any case, none of these injuries is alleged in the Complaints pursuant to the DMCA claim, which includes only grievances about "attribut[ion]" and "credit." Tremblay Compl. ¶¶ 71–72, Silverman Compl. ¶¶ 72–73; *Github*, 2023 WL 3449131, at *14 (dismissing UCL claim where claimed injuries were not "in the complaint"). Those are intangible harms that do not confer standing under the UCL. *See Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (2009).

Second, OpenAI cited case law establishing that the UCL requires a plaintiff to "establish that she lacks an adequate remedy at law," *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), and to "explain why the damages it seeks elsewhere in its complaint are not adequate to compensate it for" the injuries that form the basis of the UCL claim, *Silvercrest Realty, Inc. v. Great Am. E&C Ins. Co.*, No. 11-cv-01197, 2012 WL 13028094, at *3 (C.D. Cal. Apr. 4, 2012). Plaintiffs provide no explanation for how the alleged removal of their CMI causes them some specific harm for which there is no adequate remedy at law. *See* Opp. at 22 (Plaintiffs

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

"should still be able to seek disgorgement of OpenAI's profits for the unauthorized use of their books" even if "there has been no unauthorized copying or other infringement of [those books].").

### D.  Plaintiffs' Negligence Claim Fails

In support of their "negligence" claim, Plaintiffs insist that OpenAI owed Plaintiffs a "duty of care" because OpenAI allegedly "possessed . . . Plaintiffs' Works." Opp. at 23–24. But Plaintiffs do not address the cases in which courts have rejected attempts to assert a broad "duty to every copyright holder." *New Sensations, Inc. v. Does*, No. 12-cv-3800, 2012 WL 12898400, at *3 (N.D. Cal. Nov. 29, 2012) (negligence claim dismissed); MTD at 21; *Liberty Media Holdings, LLC v. Does 1-62*, No. 11-cv-575, 2011 WL 1869923, at *3 (S.D. Cal. May 12, 2011) (same). Nor do Plaintiffs cite cases suggesting that the mere "possession" of a copyrighted work creates a "special relationship" or a "duty not to steal" sufficient to support a tort claim for negligence.[10] Opp. at 23. If it did, every copyright claim would also support a negligence claim.

### E.  Plaintiffs' Unjust Enrichment Claim Fails

Plaintiffs' own authority explains that the law of unjust enrichment applies where "plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on defendant." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009); Opp. at 24. For that reason, pleading an unjust enrichment claim requires that the plaintiff allege *why* it conferred that benefit, whether due to its own "mistake" or the defendant's "fraud[] or coercion." *Bittel Technology, Inc. v. Bittel USA, Inc.*, No. 10-cv-00719, 2010 WL 3221864, at *5 (N.D. Cal. Aug. 13, 2010).

As OpenAI explained in its Motion, there are no allegations in the Complaints regarding any "benefit" that Plaintiffs voluntarily "conferred" on OpenAI. MTD at 22. Plaintiffs disagree, arguing that "the taking of Plaintiffs' Works by OpenAI" constitutes a "benefit." Opp. at 25. But a mere allegation that a defendant *took* something from a third-party with whom it had no contractual or quasi-contractual relationship is very different from an allegation that the defendant induced the plaintiff to *confer* a benefit through mistake, fraud, or coercion. Plaintiffs cite no case

---

[10] The only case Plaintiffs cite concerned a defendant who was alleged to be a lawful "custodian[]" of plaintiffs' *private* information, and who allegedly violated its duty to "prevent access" to that information by furnishing credit reports to unauthorized third parties for improper purposes, thereby violating plaintiffs' "privacy rights." *Witriol v. LexisNexis Grp.*, No. 05-cv-02392, 2006 WL 4725713, at *2, *8 (N.D. Cal. Feb. 10, 2006).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

1    suggesting that the former can support an unjust enrichment claim.  Rather, every single case cited

2    in Plaintiffs' briefs involved the voluntary conferral of a benefit by a plaintiff to a defendant.[11]

3    **F.    The Negligence and Unjust Enrichment Claims Are Preempted**

4          Section 301 preempts state-law claims if (1) the "subject matter" of the claim falls within

5    the "subject matter of copyright" and (2) if the rights asserted under state law are functionally

6    "equivalent to" the rights in Section 106 of the Copyright Act.  17 U.S.C. § 301(a); MTD at 22–

7    23.  Plaintiffs do not dispute the first prong.  Opp. at 17–19.  Instead, Plaintiffs assert that their

8    claims survive preemption because they are based on OpenAI's "use" of their books.  Opp. at 18.

9    In support, Plaintiffs cite two cases in which courts sustained claims against preemption

10   challenges.  *Id.* at 17, 19 (citing *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005)

11   and *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896 (9th Cir. 1992)).

12         Those cases, however, both concerned claims that had nothing to do with the rights granted

13   by the Copyright Act.  *See* 17 U.S.C. § 106.  *Altera* addressed a state-law claim against a microchip

14   manufacturer who asked customers of the plaintiff (another chip manufacturer) to use plaintiff's

15   copyrighted software to generate a "bitstream" that functioned as a blueprint which the defendant

16   could then use to create replacement chips, an act which violated the customers' license

17   agreements with the plaintiff.  424 F.3d at 1082.  Because the claim was not based on "reproduction

18   of the software," but on the "use" of existing software to create a separate file in violation of a

19   license, the claim survived preemption.  *Id.* at 1089–90.  Similarly, *Rasmussen* concerned

20   allegations that the defendant (an aircraft operator) was "free-riding" on an aircraft design that

---

[11] *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1029–31 (9th Cir. 2016) (payment solicited by "con artist"); *Hart v. TWC Prod. and Tech. LLC*, 526 F. Supp. 3d 592, 597, 604–05 (N.D. Cal. 2021) (plaintiff induced to "[g]rant [] access to" "geolocation data"); *In re General Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 875, 881–82 (N.D. Cal. 2019) (defendant induced plaintiff to pay "a premium" for "defective" parts); *ChromaDex, Inc. v. Elysium Health, Inc.*, No. 16-cv-02277, 2017 WL 7080237, at *4 (C.D. Cal. Nov. 28, 2017) (claim for "royalties [] paid" under renounced license); *Wu v. Sunrider Corp.*, No. 17-cv-4825, 2017 WL 6880087, *1–2, *4 (C.D. Cal. Oct. 10, 2017) (claim for membership fees paid to "pyramid scheme"); *CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. 12-cv-10876, 2013 WL 1249021, at *1–2, *5 (C.D. Cal. Mar. 25, 2013) (claim for payment for subcontractor's work); *Tufeld Corp. v. Beverly Hills Gateway, L.P.*, 86 Cal. App. 5th 12, 31–32 (2022) (claim for payment made under partially unenforceable lease); *see also Hadley v. Kellogg Sales Corp.*, 324 F. Supp. 3d 1084, 1090–91, 1113 (N.D. Cal. 2018) (defendant induced purchases with "misleading packaging"); *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (same); *In re Bang Energy Drink Marketing Litig.*, No. 18-cv-05758, 2020 WL 4458916, at *3 (N.D. Cal. Feb. 6, 2020) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

1   plaintiff had developed and ushered through FAA approval.  958 F.2d at 899–900.  Because the

2   gravamen of the claim was not the "duplication" of the plaintiff's drawings, but the "use" of the

3   design specification and "valuable" FAA approval, the claim survived preemption.  *Id.* at 904.[12]

4          Those cases have no relevance here because Plaintiffs' state-law claims are based on the

5   same facts as the copyright infringement claims.  MTD at 23–24.  Plaintiffs argue that their state-

6   law claims are based on the "use of [their] Works *as training material* for OpenAI's ChatGPT

7   model."  Opp. at 18 (emphasis added).  That is the precise basis for Plaintiffs' first claim for direct

8   copyright infringement, based on the use of "Plaintiffs' books . . . *as training data*."  *Id.* at 7

9   (emphasis added).  Similarly, Plaintiffs argue that their state-law claims are based on the "use of

10  [their] works as the basis of the ChatGPT model."  *Id.* at 19.  But that is the exact basis of Plaintiffs'

11  second copyright claim, which contends that OpenAI's models are "infringing derivative[s]"

12  because they are "entirely dependent on the expressive information extracted from Plaintiffs'

13  works."  *Id.* at 8.  Plaintiffs' emphasis on the word "use" in their briefing is irrelevant, because

14  preemption depends on the "essence" of the claim.  *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134,

15  1144 (9th Cir. 2006).  Because these claims rely on the "exact same allegations made in [the]

16  Copyright claim," they are preempted.  *Pourtemour v. Simpson*, No. 07-cv-7308, 2008 WL

17  11419054, at *3 (C.D. Cal. Mar. 4, 2008) (dismissing claim based on "use of [a] literary work");

18  MTD at 24 (citing cases where negligence and unjust enrichment claims based on "use" of works

19  were preempted); *Thomson Reuters Enters. Ctr. GmbH v. Ross Intelligence Inc.*, No. 20-cv-00613,

20  2023 WL 6210901, at *12 (D. Del. Sept. 25, 2023) (claim preempted).[13]

21  **III.   CONCLUSION**

22          For the foregoing reasons, OpenAI requests dismissal of Counts II through VI.

---

[12] Plaintiffs also cite *Venegas-Hernandez v. Asociacion De Compositores, Editores De Musica
Latinoamerica (ACEMLA)*, 424 F.3d 50 (1st Cir. 2005), which held it is not copyright infringement
to grant a license without authority to do so unless there was some "listed infringing act (beyond
authorization)."  *Id.* at 57–58.  In so doing, the Court suggested that a licensee who discovers it
has paid a license fee to a licensor who lacks the underlying rights may have "ample remedies"
under "state law," including a claim for "unjust enrichment" to recover that fee.  *Id.*  The case does
not in any way suggest that a plaintiff can sue for unjust enrichment based on an "infringing act."

[13] Plaintiffs cite to *Github*, in which the Court suggested that "state law tort claims concerning
unauthorized use are not preempted by the Copyright Act."  2023 WL 3449131, at *11.  This was
dicta: the Court went on to find the claim preempted.  *Id.*  Notably, the Court's only support for
the statement in question was *Altera*, which is distinguishable as discussed.  *See supra* 14.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

Dated:  October 11, 2023                    Respectfully submitted,

By:  */s/ Joseph C. Gratz*

MORRISON & FOERSTER LLP
Joseph C. Gratz (SBN 240676)
 jgratz@mofo.com
Tiffany Cheung (SBN 211497)
 tcheung@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.258.7522

Allyson R. Bennett (SBN 302090)
 abennett@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5454

By:  */s/ Andrew M. Gass*

LATHAM & WATKINS LLP
Andrew M. Gass (SBN 259694)
 andrew.gass@lw.com
Joseph R. Wetzel (SBN 238008)
 joseph.wetzel@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle (*pro hac vice*)
 sy.damle@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Allison L. Stillman (*pro hac vice*)
 alli.stillman@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.751.4864

*Attorneys for Defendants OpenAI, Inc., OpenAI,
L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C.,
OpenAI Startup Fund GP I, L.L.C., OpenAI Startup
Fund I, L.P., and OpenAI Startup Fund
Management, LLC*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO

1

## **ATTESTATION**

2          I, Andrew M. Gass, am the ECF user whose user ID and password authorized the filing of

3   this document.   Under Civil L.R. 5-1(h)(3), I attest that all signatories to this document have

4   concurred in its filing.

5   Dated: October 11, 2023                    */s/ Andrew M. Gass*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANTS' REPLY BRIEF
ISO MOTION TO DISMISS
CASE NO. 3:23-cv-03416-AMO